## PARLIN & ORENDORFF COMPANY v. F. D. GLOVER ET AL.

### Decided January 23, 1907.

**1.—Sale—Fraud—Revocation—Purchaser.**

Where the sale of property was induced by fraudulent representations the vendor may revoke and reclaim the property; a purchaser from the first vendee who took it for a debt and with notice of the fraud can not avoid such claim though he was a bona fide creditor and the property taken by him was not in excess of his debt.

**2.—Same—Pleading.**

Pleading considered and held to state a good cause of action for revocation of a sale and recovery back by the vendor of the property sold, because of fraud by the purchaser.

**3.—Limitation—Amendment—New Cause.**

The original petition being a suit to recover back property sold on the ground that the sale had been procured by fraud, an amendment presenting a cause of action of the same nature, however much elaborated, was not a new cause of action against which limitation ran after the filing of the original petition.

**4.—Sale—Rescission—Parties.**

To an action to recover from a second vendee property the first vendee had obtained by fraud the latter is not a necessary party. No decree of rescission is necessary.

Appeal from the District Court of Hays County. Tried below before Hon. L. W. Moore.

*U. F. Short* and *Will G. Barber,* for appellant.—False and fraudulent representations made by a purchaser as to his solvency and means of payment, whereby he induces a vendor to sell him goods on credit, gives him no right of property or possession to the goods acquired, and the vendor, upon discovering the fraud, may retake his property. Meyers v. Bloon, 20 Texas Civ. App., 554; Fargo v. Rider, 36 S. W. Rep., 340; Abilene Mill, etc., Co. v. Finley, 34 S. W. Rep., 311.

The defrauded vendor may, upon discovering the fraud by which he has been induced to part with his goods, retake the same, unless they have been sold by the purchaser to an innocent vendee. Hall v. Hargadine, McKittrick Dry Goods Co., 23 Texas Civ. App., 149; Walsh v. Leeper Hardware Co., 50 S. W. Rep., 630; Friedman v. Boyd, 31 S. W. Rep., 531; Blum v. Jones, 23 S. W. Rep., 844.

McMeans was not a necessary party to the determination of this action. No title passed from the appellant to McMeans or from Mc-

Means to the defendants under the allegations of the petition, which for the purposes of the demurrer are taken as true. All said parties were wrongdoers, and only the parties having the property in possession were necessary as defendants. Harrison v. Hawley, 26 S. W. Rep., 765; Morrison v. Adoue, 76 Texas, 255; Rivers v. Foote, 11 Texas, 662; Dicey on Parties, p. 439; Hawes on Parties, sec. 98; Sayles' Texas Pleading, sec. 443.

The statute of limitations had not barred the plaintiff's action. The fraud was discovered on the 19th day of September, 1897, and appellant filed his original petition four days thereafter. The amended petitions subsequently filed were for the same property, and merely enlarged and amplified the original cause of action. No new cause of action distinct and separate from that contained in the original petition was set up. Mexican Cent. Ry. Co. v. Mitten, 13 Texas Civ. App., 653; Texas & Pac. Ry. Co. v. Buckalew, 34 S. W. Rep., 165; Massey v. Blake, 3 Texas Civ. App., 58; Galveston, H. & S. A. Ry. Co. v. English, 59 S. W. Rep., 626; Wood on Limitations (3d ed.), sec. 294.

*A. B. Storey* and *R. E. McKie,* for appellees.—Defendants were bona fide creditors of McMeans, and the consideration was a pre-existing, valid indebtedness, due and owing by McMeans to them, and the consideration thus paid was adequate and greater in value than the value of the goods. Bicocchi v. Casey-Swasey Co., 91 Texas, 267, 268; Owens v. Clark, 78 Texas, 550; LaBelle v. Tidball, 69 Texas, 165; Edwards v. Dickson, 66 Texas, 614; Lewy v. Fischl, 65 Texas, 320; Greenleve v. Blum, 59 Texas, 126; Frazier v. Thatcher, 49 Texas, 26; Iglehart v. Willis, 58 Texas, 306; Schneider & Davis v. Sansom, 62 Texas, 201; Edrington v. Rogers, 15 Texas, 188; Hancock v. Horan, 15 Texas, 511.

The first amended petition, filed October 1, 1901, declaring upon a cause of action ex contractu in amendment of an original petition filed September 23, 1897, declaring on a cause of action ex delicto, was barred by the two and four years statutes of limitation. Rev. Stats., 1895, arts. 3354, 3358; Phoenix Lumber Co. v. Houston Water Co., 94 Texas, 462; Boyd v. Beville, 91 Texas, 439; International & G. N. Ry. v. Pape, 73 Texas, 502; East Line & R. R. Ry. v. Scott, 75 Texas, 84; Bigham v. Talbot, 63 Texas, 271; McLane v. Belvin, 47 Texas, 493; 2 Cyc., p. 338; Secord-Hopkins Co. v. Lincoln, 173 Ill., 357; Buerstetta v. Tecumseh National Bank, 57 Neb., 504; Wood v. Anderson, 25 Pa., 407; Missouri, K. & T. Ry. v. Bagley, 3 L. R. A., N. S., 260, and foot note.

KEY, ASSOCIATE JUSTICE.—This is a sequestration suit instituted by Parlin & Orendorff Company against F. D. Glover and Cullen Crews, for the recovery of nineteen wagons, alleged to belong to the plaintiff. The original petition was filed September 23, 1897, and for cause of action alleged that on the 20th day of that month the plaintiff was lawfully possessed of the wagons referred to, describing them; that the defendants wrongfully took them from the plaintiff's possession, and refused to deliver them to the plaintiff. On September 26, 1904, the plaintiff filed a second amended original petition, showing on its

face that a first amended original petition had been filed October 7, 1901, which, however, is not embodied in the transcript.

The defendants' answer contained a general demurrer, several special exceptions, a general denial and a plea in reconvention seeking to recover the value of the wagons which had been seized under the writ of sequestration sued out by the plaintiff. The amended petition upon which the plaintiff went to trial, after certain preliminary averments, reads as follows:

"Plaintiff states that in the month of February, 1897, it was a merchant doing business at Dallas, Texas, and engaged in the sale of agricultural implements and machinery, wagons and other vehicles. That during said month, one H. A. McMeans, who was at the time engaged in merchandizing in the town of San Marcos, in the State of Texas, desired to purchase of the plaintiff a carload of wagons. That on the 22d day of February, 1897, the said H. A. McMeans sent to the plaintiff his written order, requesting plaintiff to ship him twenty-four wagons of various sizes and descriptions, for which he offered to pay plaintiff on the 1st day of October, 1897, and to execute his notes in payment of the same, with interest after six months at the rate of eight percent per annum. That if any wagons were on hand on the first day of October, 1897, they were to be carried until October 1, 1898. That the wagons embraced in said order were six 2½ inch Bain wagons at $47 each, eight 2¾ inch Bain wagons, $48 each, and ten 3 inch Bain wagons at $49 each. That plaintiff is a member of R. G. Dun & Co.'s commercial agency, a company organized and existing for the purpose of collecting information as to the circumstances, standing and pecuniary liability of merchants and dealers throughout the country, and keeping accounts thereof, so that the subscribers of the agency when applied to by customers to sell goods to them on credit may by resorting to the agency or to the list which it publishes ascertain the standing and responsibility of the customers to whom its purpose is to extend credit. That it applied to the said Dun's agency for a report of the financial standing and pecuniary liability of the said H. A. McMeans, in order to determine whether or not to make sale to him of the wagons which he desired to buy and which were embraced in said order. That the said commercial agency did furnish a report, which having been examined by the servants and employes of the plaintiff at Dallas, Texas, they found to be insufficient to support the credit desired by the said McMeans, and thereupon the plaintiff declined and refused to make said sale unless further assured by the said McMeans of his ability to pay for the goods he desired to purchase at the time the debt created for the same should become due. That thereupon the plaintiff, through W. M. Robinson, its agent and general manager at Dallas, Texas, applied directly to the said H. A. McMeans for a full report of his property and effects, and also of all his liabilities, in order that the plaintiff might determine whether or not to make said sale. That said application for a special report of his financial standing was made to the said McMeans about the 6th day of March, 1897. That on the 8th day of March, 1897, in obedience to said request, the said H. A. McMeans made to the plaintiff a special report, a copy of which is hereto attached, marked "Exhibit A" and made a part of this petition.

"Plaintiff states that when said report was received it believed, and said McMeans intended that it should believe, and it had good reason to believe, that the cash value of the stock on hand belonging to the said McMeans was $8,500. That the amount of cash on hand in bank was $2,000, and that the total assets of said H. A. McMeans amounted to $10,800. That the amount of indebtedness outstanding against said McMeans was $3,000, and that his assets above his liabilities were of the value of $7,800. That in addition to the assets above named, plaintiff was the owner of a homestead of the value of $3,000. After relying upon the truth of his financial statement, and believing the same to be true and that the said McMeans was worth $7,800 over and above all of his liabilities, and that all of his liabilities were disclosed upon said statement, plaintiff concluded to make the sale of said wagons to the said McMeans on the credit desired in said order, and that it did make said sale; but plaintiff avers that the said financial statement was not a true and correct statement of the financial condition of the said McMeans. That his stock of goods at the time said statement was made did not exceed in value the sum of $6,000, and that the said McMeans had nothing to his credit in bank, instead of the sum of $2,000, as stated in said report. That instead of his liabilities for merchandise and open account not due being about $3,000, plaintiff states that the liability then existing and outstanding and undue were about the sum of $7,000.

"In answer to the inquiry whether any loans existed to friends or relatives, plaintiff states that said McMeans made no answer thereto, intending that the plaintiff should believe, and plaintiff states that it did believe, that no such indebtedness existed to friends or relatives, whereas in truth and in fact, plaintiff states that the said McMeans was indebted to the defendants F. D. Glover and Cullen Crews in the sum of $7,500 for borrowed money, and that the sum so borrowed from said defendants constituted the entire capital upon which the said McMeans began and established his business. That instead of assets above his liabilities and above his homestead exemptions of the value of $7,800, plaintiff avers that the said McMeans was indebted on the date said report was made for every dollar of the goods which his stock contained, either to the merchants from whom said stock was purchased or to the defendants F. G. Glover and Cullen Crews, for the sum advanced by them to make cash purchases; that instead of being solvent, the said H. A. McMeans was bankrupt and insolvent and knew himself to be so, and made all said representations to the plaintiff for the fraudulent purposes of obtaining its goods and cheating and defrauding it of the value thereof.

"That in answer to the question who is your largest creditor, the said H. A. McMeans answered Eli Walker Dry Goods Company, of St. Louis; whereas, in truth and in fact, the said Eli Walker Dry Goods Company was not the largest creditor, but the said McMeans was indebted to the said Eli Walker Dry Goods Company only in about the sum of $500, whereas he was indebted to the defendants in the sum of $7,500, as hereinbefore stated. Wherefore, plaintiff states that the said H. A. McMeans obtained from the plaintiff the possession of the property described in its original petition filed herein, and also hereinafter

described, by false and fraudulent representations, and for the purpose of cheating and defrauding the plaintiff of the value thereof, and that the sale made by the plaintiff of said wagons was null and void.

"That said wagons were shipped by the plaintiff to the said H. A. McMeans under the circumstances above related about the first of April, 1897, and were received by said H. A. McMeans and accepted by him during said month of April, 1897.

"Plaintiff further states that for many years prior to 1897, the said H. A. McMeans had been the intimate friend associate of the said defendants F. D. Glover and Cullen Crews. That said McMeans was and was well known to each of said defendants to be absolutely worthless and insolvent in a financial sense. That in addition to being worthless and insolvent, he was a man of dissipated habits, and that his impoverished financial condition was largely due to this vice. That the said defendants desired to engage in the mercantile business themselves at San Marcos, Texas, but being unwilling to incur the responsibility of such an enterprise in their own names, but willing to be known therein only in case the venture proved successful, determined to establish the said H. A. McMeans, and in case he became successful, they would share with him in the responsibility of being such owners only after success had been assured. With this purpose in view, plaintiff states they, the said defendants, lent to the said McMeans the sum of $7,500, with the agreement and understanding that the said McMeans should establish a mercantile business in said town of San Marcos, and that when said business was fully established and proven to be safe, that then the said defendants would become part owners of it, and would share in the profits and losses. That said defendants declined to become such owners until the experiment had been fully tried and the enterprise established and proven to be profitable. That until such time the said defendant would only be the creditors of the said McMeans, and that their responsibility as owners should not attach, and that with this distinct agreement and understanding between said defendants and the said H. A. McMeans, the sum of $7,500 was lent, and the said McMeans received the money and used it in the purchase of his goods and for establishing a credit upon which he could obtain goods.

"Plaintiff further states that during all the time the said store was in existence under the conduct of the said McMeans, his indebtedness to the said defendants was concealed from all of his creditors. That in making his financial reports to the mercantile agencies and to the plaintiff, said indebtedness was concealed and suppressed in order to deceive those whom he desired to trust him. That said concealment was by the connivance and with the sanction and consent of said defendants, and that each of said defendants counseled and advised said McMeans to conceal said indebtedness in order that credit would be freely extended by the wholesale dealers from whom he purchased goods. That the said McMeans and the said defendants intended and it was understood between them that in case the venture under the conduct of the said McMeans should prove unsuccessful, that then the stock of goods under the management of the said McMeans would be sold and delivered

to said defendants, or that they would be fully secured and protected by a preferential deed of trust or other conveyance made to exclude all creditors save and accept the said defendants, and that only the innocent victims of the said McMeans would be the real sufferers from his misfortune.

"Plaintiff states that after said goods were sold and delivered to the said McMeans in the manner and under the circumstances above described they were taken in charge by said purchaser and remained in the stock until the 18th day of September, 1897, when the said defendants Glover and Crews learned that the said mercantile venture undertaken by the said McMeans would likely prove disastrous, and thereupon on said date they required the said McMeans to transfer and deliver to them the entire stock of goods, notes and accounts, including the wagons then on hand which had been obtained from the plaintiff under the circumstances hereinbefore related. That said pretended sale was made for a grossly exaggerated consideration, and that it was really made in payment of the prior indebtedness due and owing from said H. A. McMeans to said defendants, and that no other consideration was paid for said transfer, as plaintiff is informed and believes and alleges. That the said defendants F. D. Glover and Cullen Crews knew, or could by the exercise of ordinary diligence have known that the said wagons had been obtained from the plaintiff by the fraudulent means hereinbefore stated, and that they had never been paid for in whole or in part. That there was at the time of the transfer by the said H. A. McMeans to said defendants, nineteen of the wagons of the value of $60 each, and of the total value of $1,140, which said McMeans had obtained from plaintiff by the fraudulent means hereinbefore related, and that the same were delivered by the said McMeans to the defendants under the circumstances hereinbefore related, at and before the bringing of this suit. Plaintiff states that it had no knowledge of the fraud perpetrated upon it by the said H. A. McMeans until about the 19th of September, 1897, when it learned of the transfer of said wagons and other goods embraced in the stock belonging to the said McMeans to said defendants. That it never knew or had any reason to believe that the representations made by the said H. A. McMeans to this plaintiff in order to obtain credit were untrue or false in any respect, until it learned the same by inquiring after the transfer of the stock of goods to the defendants on the 18th day of September, 1897, as hereinbefore stated.

"Plaintiff states that said defendants are not the purchasers of said wagons in good faith, but that the same were obtained from the said McMeans with full knowledge that they were really the property of the plaintiff, having been obtained by him by fraud, and that they were received by defendants in bad faith.

"Wherefore it says that it has never parted with its title to said property, and that the sale made by it to the said H. A. McMeans is absolutely void. That it is the real owner of said wagons and entitled to the possession thereof. Wherefore, it says that defendant having already been cited to answer in this behalf, and having fully answered, plaintiff prays for judgment for the recovery of its property, and costs of suit and for all proper relief."

In addition to the general demurrer and certain other special exceptions, the defendants excepted specially to the petition for the following reasons:

1. Because it does not show when plaintiff first discovered the alleged fraud, and does not show any rescission of the sale before McMeans had sold the property to the defendants, and because it is shown that the original petition was not filed until after the defendants became purchasers and until more than four years after the filing of the original petition.

2. Because McMeans was not made a party defendant, and because more than four years had elapsed between the date of the sale and the filing of the second amended original petition.

3. Because it appears that the plaintiff has ratified the sale by waiting more than four years before seeking a rescission.

4. Because McMeans was a necessary party defendant.

These special exceptions, as well as the general demurrer, were sustained. There was a trial upon the cross action and judgment rendered thereon in favor of the defendants, and the plaintiff has appealed and assigns as error the action of the court in sustaining the general demurrer and special exceptions to the amended petition.

*Opinion.*—We think the petition states a good cause of action against the defendants, and that the trial court committed error in the rulings referred to. Counsel for appellees earnestly insist in their brief that the rulings complained of are sustainable for the reasons pointed out in the exceptions, and especially for the reasons (1) that it affirmatively appears on the face of the petition that the defendants were bona fide creditors of McMeans, and that the property purchased was not in excess of the debt for the payment of which they received it; (2) that the second amended original petition shows that the cause of action accrued more than four years before that pleading was filed, and was therefore barred by the statute of limitations.

Many authorities are cited upon the proposition that a creditor may purchase from his debtor sufficient property to pay the debt, although such creditor may have notice of the fact that the insolvent debtor intends by such sale to hinder, delay or defraud other creditors, but the cases cited are not in point. Appellant is not suing as a creditor of McMeans, but is suing to recover property alleged to belong to appellant, and to have been, as against appellant, wrongfully acquired by appellees. The case does not involve any question of the relative rights of creditors. It is true that the petition alleges a sale of the property by appellants to McMeans; but it also alleges facts which show that the sale was procured by misrepresentation and fraud on the part of McMeans, and alleges that the appellees had knowledge of such facts at the time they acquired the property from him. Upon this state of facts appellant had the right to disavow the sale and recover the property. (Morrison v. Adoue, 76 Texas, 255.)

Upon the subject of limitation appellees' contention would be correct if the filing of the second amended original petition was the beginning of the suit, but such is not the case. It, like the original petition, alleges that appellant is the owner of the property and that the defend-

ants have wrongfully converted it, and asks for judgment for the property. It is true that the amended petition is much more elaborate, but, after all, it seeks to recover the same property and upon the same ground, that of title and conversion, alleged in the original petition. This does not constitute a new cause of action. (Massey v. Blake, 3 Texas Civ. App., 58, 21 S. W. Rep., 782; Galveston, H. & S. A. Ry. Co. v. English, 59 S. W. Rep., 626; Texas & Pac. Ry. Co. v. Buckalew, 34 S. W. Rep., 165; Mexican Cent. Ry. Co. v. Mitten, 13 Texas Civ. App., 653; Landa v. Obert, 78 Texas, 33.)

Nor do we believe that it was essential that McMeans should be made a party defendant. The petition does not seek to obtain a judgment rescinding the contract of sale, but alleges facts which, if true, entitled appellant to disavow and repudiate the sale and retake or maintain an action to recover the property. It also alleges that a conspiracy was entered into between McMeans and appellees for the purpose of obtaining the property from appellant by false and fraudulent representations. If this be true, then appellees and McMeans are joint tort feasors, and it is a familiar rule that such wrongdoers may be sued, either jointly or severally.

For the errors referred to the judgment is reversed and the cause remanded.

*Reversed and remanded.*