## FUNKHOUSER et ux. v. CHEMICAL BANK & TRUST CO.
### No. 9747.

Court of Civil Appeals of Texas. Galveston.
July 15, 1932.

Rehearing Denied Sept. 29, 1932.

Henderson & Copeland, of Houston, for appellants.

Hunt & Hunt, of Houston, for appellee.

LANE, J.

The following is a fairly accurate statement of the transactions leading up to the filing of this suit:

On November 6, 1919, Greater Houston Improvement Company, by its deed of that date, conveyed to Robert Funkhouser the south 25 by 125 feet of Lot 18 and the adjoining north 25 by 125 feet of Lot 19, block 16,

Montrose addition, known as 3619 Audubon place. In consideration for such conveyance, Funkhouser executed and delivered to said company certain notes which were secured by vendor's lien and also by a deed of trust executed by Funkhouser. Such indebtedness and liens on the unsatisfied or unpaid part thereof were renewed and kept alive and in force. It passed by transfer and indorsement to United States Mortgage & Trust Company, which was later merged with Chemical Bank & Trust Company, under the latter's name.

In the proceedings to renew and keep in force the above-mentioned indebtedness, and prior to the merger mentioned, Robert Funkhouser and wife, on the 30th day of April, 1928, executed and delivered to United States Mortgage & Trust Company their promissory note, reading as follows:

"Real Estate Mortgage Note.

"In installments as hereinafter provided for value received we promise to pay to the order of United States Mortgage and Trust Company at Houston Land and Trust Company, Houston, Texas, the principal sum of Six Thousand ($6,000.00) Dollars in Gold Coin of the United States of America of the present standard of weight and fineness with current rate of exchange on New York City, and with interest on said principal sum from April 30th, 1928, to maturity at the rate of 6½ per cent. per annum, payable semiannually as it accrues, on the first days of May and November in each year, according to the tenor and effect of Ten interest coupon notes, bearing even date herewith and number from 1 to 10, both inclusive.

"This note is payable in 10 installments as follows: Nine (9) thereof for the sum of One Hundred Fifty ($150.00) Dollars, the first payable on the first day of November, 1928, and one every six months thereafter until nine thereof have been paid, and one thereof for the sum of Four Thousand Six Hundred Fifty Dollars payable on the first day of May, 1933.

"This note and any installments of principal due hereon and said interest coupon notes shall bear interest after maturity at the rate of ten per cent. per annum.

"It is understood and agreed that in case any installment of said principal sum, or any of said interest coupon notes are not paid when due, or in case of failure to comply with any of the agreements or conditions of the Deed of Trust given to secure this note, then at the election of the legal holder hereof, at any time thereafter made, the unpaid balance of the principal sum expressed in this note, with all accrued interest, may by said holder be declared immediately due, without notice, and may be collected forthwith by

148

sale under said Deed of Trust or otherwise as such holder may elect. In event this note is placed in the hands of an attorney for collection, or if it is collected through the Bankruptcy or Probate Court or by other legal proceedings, we agree to pay ten per cent. additional on the principal and interest then due, as attorneys fees.

"The makers hereof have the privilege of paying ten per cent. on account of principal on any interest day, by giving sixty days written notice."

At the time said note was executed and contemporaneously therewith, Funkhouser and wife executed and delivered to the United States Mortgage & Trust Company a deed of trust to secure payment of the indebtedness evidenced by the above mentioned note, wherein it is, in effect, recited that such instrument is executed for the purpose of renewing, merging, and extending into the above-described notes the balance due upon the indebtedness shown in a certain deed of trust, the record of which is recited for certainty.

In pursuance of the agreements and contract evidenced by the $6,000 note and deed of trust mentioned, Robert Funkhouser and wife executed and delivered to United States Mortgage & Trust Company their ten notes as stated in said $6,000 note, that is, nine for the sum of $150 each, and one for $4,650, and also ten notes called "interest coupon notes," each for the sum of $195, such coupon notes evidencing the interest to become due on the several dates borne by such interest coupon notes.

In each of such interest coupon notes it is recited as follows: "This coupon is subject to pro rata reduction in amount on account of any payment which may be made on principal note, in accordance with the provisions of said note or any extension thereof, or the mortgage or deed securing the same."

After execution, all notes were placed under one cover and fastened together.

The coupon note referred to as No. 1, as originally executed, was in part in words and figures as follows:

"$195.00          12981 No. One.

"On the first day of November, 1928, we promise to pay to the order of the United States Mortgage and Trust Company One hundred Ninety Five and No/100 Dollars."

All other notes referred to as coupon notes were in the same words, except as to dates of payment.

When note No. 1 became due, Miss Irene Woodell, bookkeeper for United States Mortgage & Trust Company, made some mark over the figures $195.00, and a little to the right thereof she wrote with pen and ink the figures $193.92.

As note No. 2 became due, the figures $195.-00 were marked out, and a little to the right thereof she wrote the figures $190.51; such changes being made to show the exact amount due on each of said notes at the time they were being presented for payment. Such changes were made upon the interpretation placed upon that part of the coupon notes reading as follows: "This coupon is subject to pro rata reduction in amount on account of any payments which may be made on said principal note, in accordance with the provision of said note or any extension thereof, or the mortgage or deed securing same."

Notes Nos. 1 and 2, after being changed as stated, were paid without protest. When note No. 3 became due, a change was made on its face in practically the same manner as were notes Nos. 1 and 2. No change of any kind was made on any of the remaining notes.

It is provided by the deed of trust given to secure the payment of the indebtedness mentioned, as well as in the principal note, that upon a failure of the makers of the notes to pay the notes as they become due, to pay all taxes and public assessments levied or assessed against the property described, etc., at the option of the holder of said notes shall mature the entire indebtedness.

Default was made in the payment of coupon note No. 3 when it became due, and the taxes assessed against the property remained unpaid, and the Chemical Bank & Trust Company, hereinafter referred to as the Chemical Company, the holder of said indebtedness, declared the whole of the same due, and instituted this suit against Robert Funkhouser and wife, the makers of the notes, to recover upon the notes interest, taxes and attorney's fees, and for a foreclosure of its lien given to secure payment of said notes.

Defendants answered, praying that the suit of the plaintiff be abated because of the nonjoinder of United States Mortgage & Trust Company, alleging that it appeared from plaintiff's petition that United States Mortgage & Trust Company is the payee named in the notes sued upon, and it does not show or allege any right, title, or interest in plaintiff to such notes or deed of trust given to secure payment of them; that defendants are informed and believe that the Chemical Company has no right, title, or interest in or to the notes and deed of trust; that, if plaintiff had ever acquired any such right, title, or interest, it subsequently sold and assigned the same to the Mortgage-Bond Company of New York, whose agent in Houston is J. C. Leonard, and therefore said Mortgage-Bond Company is a proper and necessary party plaintiff.

Pleading further, defendants deny generally, and specially alleged that the Chemical

Company is not the owner or holder of the notes sued on, nor the liens given to secure said notes.

They admit the execution and delivery of the notes sued on and the deed of trust mentioned, but they allege that, since such execution and delivery, there has been a material alteration in the notes; they then describe the alterations made on coupon notes Nos. 1, 2, and 3, which we have described in our preliminary statement. They allege that such alterations were not authorized by them nor made under any provision in the contract, principal note, or interest coupon notes; that there has been a material alteration in the entire series of the interest coupon notes without the knowledge and consent of defendants and without notice to them that such alterations were made until this suit was filed; that the making of such alterations in the coupon notes vitiates the principal note and all interest coupon notes, in their entirety, and renders the principal note and all interest coupon notes, and the deed of trust securing same, null and void.

They allege that the principal note refers to the interest coupon notes and makes them a part thereof; "that such interest coupon notes represent the semi-annual installments of interest due and to become due on the principal note; that said interest coupon notes were executed at the same time and contemporaneously with the execution of the principal note and deed of trust, which deed of trust was given to secure the payment thereof; that the interest coupon notes constitute a part and parcel of one single contract and transaction; that the interest coupon notes were materially altered within the contemplation, purview and meaning of sections 124 and 125 of article 5939, Revised Civil Statutes of 1925; that such material alteration changed the terms and provisions of the entire contract between defendants and the United States Mortgage & Trust Company, and has rendered the entire contract, including the principal note, interest coupon notes, and deed of trust ab initio void and unenforceable."

They allege that they had at no time ratified or confirmed the alterations made on the coupon notes or the principal note. They pray for the cancellation of all the notes sued on and the deed of trust securing payment of the notes.

By supplemental petition plaintiff alleged that the changes made in the interest coupon notes Nos. 1, 2, and 3 were made in accordance with the terms of the principal note, the interest coupon notes and deed of trust executed by defendant, now held by plaintiff, and upon which its cause of action is based; that the alterations complained of by defendants are not material alterations, but are in the nature of memoranda for the convenience of the maker and the holder of the notes which in no manner affects the rights of any of the parties interested; that such changes were made in good faith with no intent to defraud the maker of the coupon notes. Plaintiff alleged that, if it be held that the alterations are material alterations, it says that such alterations have been ratified by the makers of the interest coupon note No. 3, by reason of the fact that the makers with full knowledge of the facts have made payment of interest coupon notes Nos. 1 and 2, after such notes had been changed, without protest; and that, when coupon note No. 3 was presented for payment, the defendants and each of them, with full knowledge of the facts and the sum due thereon, made repeated promises to pay same, and by their actions they have ratified the alterations made on the interest coupon notes.

Plaintiff also denied generally the allegations of the defendants.

Before judgment was rendered, the Mortgage-Bond Company of New York filed a disclaimer of any ownership or interest of any kind in the indebtedness sued on.

The court overruled defendants' plea in abatement based upon their plea of nonjoinder of other parties by plaintiff. Whereupon a jury was chosen and sworn to try the cause, but, after all evidence had been closed, the court instructed the jury to return a verdict for the plaintiff against defendants for the sum of $6,834.02, principal and interest due upon notes, for $456.33 taxes paid by plaintiff, and $683.40 attorney's fees, a total of $7,973.75, and for foreclosure of the lien prayed for by the plaintiff.

Such verdict was returned, and judgment was accordingly rendered. From such judgment defendants have appealed.

Appellants under their fourth and sixth propositions complain of the action of the court in overruling their plea in abatement, challenging the ownership of plaintiff to the indebtedness sued on, and in refusing to submit to the jury the issue as to whether or not plaintiff had the right, title, and possession of the notes sued on at the time the suit was instituted.

We overrule the complaint. The undisputed evidence shows that plaintiff was in possession of the notes asserting ownership thereof; that it placed the same in the hands of W. B. Hunt, its attorney, with instructions to institute suit on the same in its name; that, in accordance with such instruction, said attorney instituted this suit. The Mortgage-Bond Company of New York, alleged by defendants to be the equitable owners of the indebtedness sued on, filed in this suit a disclaimer disclaiming any interest in the indebtedness.

No matters of defense as to the Mortgage

Bond Company of New York or Mortgage Bond & Title Corporation were pleaded in appellants' plea in abatement, nor was any matter of defense set forth under appellants' other pleadings which would have defeated appellee's cause of action against the equitable owner of the notes and not against the legal owner thereof.

The Negotiable Instrument Act provides as follows: "The holder of a negotiable instrument may sue thereon in his own name and payment to him in due course discharges the instrument." Article 5935, R. C. S. 1925, § 51.

The appellee, plaintiff below, offered in evidence the instruments sued upon properly indorsed and being made payable to the appellee under the indorsement of the original payee. No question was raised as to the genuineness of the indorsement, and the instruments themselves were produced in court.

The case of Neyland v. Lanier (Tex. Civ. App.) 273 S. W. 1022, 1023, was a case in which suit was instituted by J. L. Neyland, the payee of a promissory note in the sum of $700, against W. E. Flynn and G. T. Lanier et al., as makers of the note. The defendants, among other things, contended that, at the time the $700 note was executed and the money loaned, $300 of the $700 belonged to J. H. Neyland and $400 of the note belonged to Neyland's son, Dewitt. From a judgment in favor of the defendant, Neyland appealed, and the Court of Civil Appeals, in passing upon the contention that Neyland could not recover on the $700 note because he did not own the same, used the following language:

"The fact, that appellant did not own the entire equitable interest in the note, did not prevent his maintaining a suit thereon as the legal owner and holder thereof. Section 51 of the Uniform Negotiable Instruments Act provides specifically that the holder of a note may maintain suit in his own name. It has been the holding of our Supreme Court from its earliest decisions that the person, who appears to be the legal holder of a promissory note, may maintain an action upon it in his own name, although the actual ownership is in another. Thompson v. Cartwright, 1 Tex. 87, 46 Am. Dec. 95; * * * Allison v. Phœnix Ins. Co., 87 Tex. 593, 30 S. W. 547."

In Nickels v. Gilmore (Tex. Civ. App.) 293 S. W. 884, 885, the maker of the note sued on contended that plaintiff was not the true owner of the note, but that the Republic National Bank of Dallas was the equitable owner thereof, and the court, in deciding the issue, said:

"As the notes were payable to Gilmore, he was entitled to recover, in the absence of any defense shown to exist between plaintiff in error and an equitable owner. In this situation, it was immaterial that others owned equitable interests in the notes or debt, as the judgment rendered on the notes will be a complete bar to another suit by any such equitable owner.

"This doctrine was very clearly announced by our Supreme Court in the early case of Thompson v. Cartwright, 1 Tex. 87, 46 Am. Dec. 95, uniformly adhered to since. The court said:

" 'The true and real owner of the note sued on, in the case under consideration, could not have been a material inquiry. The note itself showed the right of the plaintiff to sue at law; and the inquiry whether there was an equitable owner, aside from or behind the legal ownership, was not essential to the rights of the defendant, unless there was matter of defense growing up between him and such equitable owner. The judgment against him would be a complete bar to another action, on the same note. The inquiry, who was the real owner, could only have been a matter of idle curiosity.' McMillan v. Croft, 2 Tex. 397; Fowler v. Willis, 4 Tex. 48; Zachary v. Gregory, 32 Tex. 452; Brown v. Chenoworth, 51 Tex. 469, 476, 477; Allison, etc., v. Phœnix Ins. Co., 87 Tex. 593, 596, 30 S. W. 547."

In Houston Finance Corporation v. Stewart (Tex. Civ. App.) 7 S.W.(2d) 644, 646, it is said: "It has long been well settled that one who has the legal title to a note may sue in his own name, though the equitable title be in another, unless the defendant have a defense against one which he could not urge against the other."

By appellants' first and second propositions, they insist that the alterations shown to have been made in interest coupon notes 1, 2, and 3 were material alterations and rendered the principal note and all interest coupon notes void and unenforceable; therefore the court erred in instructing a verdict for the plaintiff and in not instructing a verdict for defendants.

We overrule appellants' contention. If it be conceded that the coupon notes were negotiable instruments and are governed by our Negotiable Act, which concession is not made, we would nevertheless hold that under the facts of this case none of the notes were rendered void and unenforceable by reason of such alterations.

It was provided in the principal $6,000 note that, upon the performance of certain conditions, the makers might pay 10 per cent. of the principal of the note at any interest paying period. The first installment on the note was to become due six months after the date of the note, and a like installment was to become due each six months thereafter until the tenth installment, at which time the entire balance due upon the note was to be paid; the instrument further providing that

the note and any installment of principal due thereon should bear interest after maturity at the rate of 10 per cent. per annum. The note bore interest at the rate of 6½ per cent., payable semiannually at dates coincident with the dates upon which the installments of principal became due.

The interest upon the principal note was evidenced by ten interest coupon notes, each providing for the payment of $195, using the following language: "Being the interest on principal note for $6,000.00 of even date herewith. * * * This coupon is subject to pro rata reduction in amount on account of any payments which may be made on said principal note, in accordance with the provisions of said note or any extension thereof, or the mortgage or deed securing the same."

It seems apparent that the reason for making the alterations in the interest coupon notes Nos. 1, 2, and 3 was based upon the following facts:

The first installment of the principal due on November 1, 1928, was paid, but the second installment due May 1, 1929, was unpaid. Under the terms of the principal note, this installment, being past due, bore interest at the rate of 10 per cent. per annum. The balance due then upon the note amounted to $5,850; $5,700 of which bore interest at the rate of 6½ per cent. per annum from May 1, 1929, to November 1, 1929, amounting to the sum of $185.25, the balance, amounting to $150, being a past-due installment of principal, bore interest at the rate of 10 per cent. per annum, amounting to $7.50, the total being $192.75.

■■ Granting, however, for the sake of argument, that the coupon notes are negotiable instruments as contemplated by our Negotiable Instrument Law, and that the changes made in coupon notes 1, 2, and 3 amounted to material alterations, still none of the notes would thereby be rendered void and unenforceable by reason of the provisions of section 124 of article 5939, Revised Civil Statutes of 1925, invoked by appellants, which is as follows: "Where a negotiable instrument is materially altered without the assent of all parties liable thereon, it is avoided, except as against a party who has himself made, authorized or assented to the alteration, and subsequent indorsers."

This statute is expressive of the common law, and it will be noted that the alteration to be material must be made without the assent of all parties liable thereon. This rule is well stated in Texas Jurisprudence, volume 2, p. 700, par. 8.

As already stated, coupon notes Nos. 1 and 2 as altered were presented to and paid by appellants without protest. It thus indisputably appears that appellants had assented to the alterations made in coupon notes Nos. 1 and 2, and that, having full notice and knowledge that such alterations were being made on the interest coupon notes, it was within the contemplation of the parties that such alteration would be made on interest coupon note No. 3, and that appellants assented to such alteration being made.

It is apparent from a consideration of the authorities cited and the facts shown that, though the alteration made in note No. 3 was material, such note will not be avoided by reason of such alteration.

 We hold, however, that the interest coupon notes were not negotiable instruments, and are not governed by any of the provisions of the Negotiable Act (Rev. St. 1925, art. 5932 et seq.), but, if they were, since coupon notes Nos. 1 and 2 were paid, the validity of note No. 3 alone was affected by the alterations made, even though such alteration be material.

For the reasons pointed out, we overrule all of appellants' assignments and order that the judgment of the trial court be affirmed.

Affirmed.