PUCKETT et al. v. BIG LAKE STATE BANK.

No. 2989.

Court of Civil Appeals of Texas. El Paso.

May 17, 1934.

Rehearing Granted June 28, 1934.

Rehearing Denied July 19, 1934.

Kerr & Gayer, of San Angelo, and Fowler Roberts, of Big Lake, for appellants.

J. A. Moore, of Big Lake, for appellee Beck and others.

T. B. Ridgell, of Dallas, for appellee bank.

WALTHALL, Justice.

Plaintiff, the Big Lake State Bank of Big Lake, Tex., brought this suit against defendants H. L. Puckett and Collin Puckett, as makers, and against John O. Beck, Taylor Emerson, and Fulton Emerson, as indorsers, for an unpaid balance of $4,115 on a promissory note, originally in the principal sum of $4,100, executed by defendants H. L. Puckett and Collin Puckett, payable to John O. Beck and Taylor Emerson, and indorsed by them and Fulton Emerson.to the plaintiff bank; the note by its statement was given in payment for a town lot in Big Lake, good will, and all of the physical assets of the insurance agencies known as the "Big Lake Insurance Agency," and the "Rowe Insurance Agency." The principal note is payable in twenty stated monthly installments, and contains an accelerating clause; the note provides for the payment of attorney fees under the terms stated. The note is signed by H. L. Puckett and Collin Puckett. Credits are indorsed on the back of the note. A further indorsement on the note is to the effect that for value received the note is sold, transferred, and assigned to the plaintiff bank together with the said two liens securing its payment, and as indorser the note is signed in

blank by Taylor Emerson and Fulton Emerson, and by John O. Beck, as follows: "I, John O. Beck, endorse to the extent of Twelve Hundred Dollars."

The record then contains an instrument reciting that for valuable consideration paid the note described, executed by H. L. Puckett and Collin Puckett, is sold, assigned, and conveyed to the plaintiff bank, and contains other provisions which we need not state.

. The instrument is signed by defendants John O. Beck and Taylor Emerson.

The record also contains an agreement in writing by all of the parties to a sale to J. M. Greenwood of the real estate and the two agencies for $2,000, evidenced by the Greenwood notes, and the proceeds of such notes to be held in the registry of the court to abide the outcome of this suit.

The record shows other matters of agreement; the Greenwood notes, transfers, etc., about which there is no controversy, and which we need not further state.

Defendants Beck, Taylor Emerson, and Fulton Emerson answered by general demurrer and general denial, and Taylor Emerson and John O. Beck pleaded over against defendants H. L. and Collin Puckett, that certain indebtedness pleaded by said codefendants are not chargeable against them; that any loss of business pleaded by codefendants is not chargeable against these defendants; that defendants Puckett examined the books and acting for themselves purchased said properties, and denied any representations were made and fraud in the transaction.

H. L. Puckett and Collin Puckett answered by general demurrer, admit the execution of the promissory note sued on and the several instruments above described, and other than the above they deny generally.

They further answered: That the said $4,100 note had been given in payment for the good will of and the said agencies and the real estate described; that the plaintiff bank as a matter of law knew said agencies "are not delegable," and "wherefore the law itself notified said Bank of the failure of title and of the impossibility of said Emerson and Beck transferring any right to act as agents for any insurance companies whom they represented. But that said Bank took said installment note knowing that the same was so given for said rights which the payee therein could not convey as aforesaid. Wherefore it is not an innocent purchaser."

The answer further alleged certain facts

and representations made to defendants by Taylor Emerson and John O. Beck as to the renewal insurance business of said agencies as shown by the books of said agencies, to the effect that said renewals amounted ·to $3,500 in the then current year ending that day, and that by reason thereof said business was worth $3,500; that said representations were material and relied upon, but were false, and that $2,203.20 of said business was not renewable, but mostly canceled; that contrary to said representation the value of such business was improperly reflected in said books and representations by reason thereof material omissions from said books of certain unpaid debts of said agencies, which itemized totals $6,000, and that by reason of which the consideration for said $4,100 note failed; that each and all of such matters were known to plaintiff bank, and that it took said installment note subject to all of said defenses.

The answer further alleged that defendants (H. L. and Collin Puckett) first discovered the above facts with reference to said property about the 1st of July, 1932, and thereupon immediately notified all parties of their unwillingness to proceed further with said transaction, and requested an equitable adjustment or a rescission and cancellation of the whole deal, but that plaintiff bank and the other defendants refused to consider same.

Defendants ask that plaintiff bank take nothing, and that these defendants have judgment against their codefendants for their damages stated, and in the alternative for rescission and cancellation as to all parties.

Plaintiff bank answered denying that it had any notice of any vice or fraud in said note; pleaded that it had no notice of any representations of Emerson and Beck to defendants Puckett, and that any such representations, if any, are immaterial as to and not binding upon the bank; denied that it took said installment note subject to any of the defenses pleaded by defendants; the bank further answered by general denial; denied any failure of consideration, and alleged that it paid value before maturity.

The trial court instructed a verdict in favor of the bank against all of the defendants in the principal sum of $4,100, interest and attorney's fee, less the credits indorsed on said note, stating same; that defendants Taylor Emerson and John O. Beck recover against H. L. and Collin Puckett a like sum on their cross-action.

The court received the verdict. The court then made finding that the plaintiff is entitled to recover against all of the defendants, naming them, except as to John O. Beck, the principal sum of the note, interest, and attorney's fee, stating each, making a total judgment in the sum of $4,115.01; as to John O. Beck the court having found that he had limited his liability as indorser on the note to $1,200, and that the payments and the payment hereinafter credited on the judgment amounted to more than his indorsement on the note to the bank, the bank should take nothing as to John O. Beck; as to Taylor Emerson and Fulton Emerson, indorsers on the note, judgment was entered in their favor against H. L. and Collin Puckett in case they are compelled to pay the judgment in favor of the bank, the sum of $2,115.01, that is, the full amount of the judgment less the amount for which the properties were sold under the agreement to Greenwood, and the proceeds placed in the registry of the court.

Defendants H. L. and Collin Puckett prosecute this appeal.

### Opinion.

██ The note sued on contained the following language: "The principal of this note is payable in twenty monthly installments of $200.00 each, and one installment of $100.00; the first installment being due and payable on or before the 15th day of February, 1932; and one installment to become due and payable on or before the 15th day of each succeeding month thereafter until the whole principal is paid. The interest on this note is payable on each installment at maturity thereof, and all past due interest shall bear interest from maturity at the rate of ten per cent per annum."

Appellants submit that the note does not state whether the $100 installment shall be paid first, last, nor on any other particular month, nor at whose option can the time for maturity of that particular installment be fixed. It is therefore contended that said note is not complete; that it fails to contain promises to pay any sums certain at fixed times; consequently the bank is without the protection of the law on holders in due course and its rights thereunder are those of the holder of a nonnegotiable instrument.

The Negotiable Instrument Act by article 5932, § 1, subd. 3, provides:· "An instrument to be negotiable must conform to the following requirements: * * * 3. Must be payable on demand, or at a fixed or determinable future time."

The same article of the statute by section 4, subd. 1, in order for the note to be negotiable, provides: "An instrument is payable at a determinable future time, within the meaning of this Act, which is expressed to be payable: 1. At a fixed period after date or sight."

The clause in the note permitting the holder at his option to mature all indebtedness upon nonpayment of one installment of principal or interest does not destroy the negotiability of the instrument. Vol. 6, Tex. Juris. p. 621, par. 28, and cases noted. The same as above applies to a demand note. Same reference as above. Hence the accelerating maturity clause in the instrument does not have the effect to make uncertain the due date of any installment, if otherwise the due date period is fixed.

By the instrument the date is definitely fixed; also the date of payment of the "first installment," and "one installment to become due and payable on or before the 15th day of each succeeding month thereafter until the whole principal is paid."

The only indefiniteness, if any, we observe in the note seems to be that the note, while expressed in one instrument, is made payable in twenty installments each unnumbered, each in a fixed amount; but the instrument does not state the order, that is, does not indicate which one of the installments become due. The payor elected to pay as a payment became due four of the $200 installments, then paid $75 (apparently on interest) which was accepted, and refused to make further payments; whereupon the bank declared all unpaid amounts due.

We have concluded that the note, otherwise negotiable, is not rendered nonnegotiable by reason of its not being complete on its face, or by reason of the due date of the note or any one of its installment payments not definitely fixed or determinable at a future time.

■■ The note sued on was made payable to Taylor Emerson and John O. Beck. The note never was indorsed to Fulton Emerson. Fulton Emerson indorsed the note to the bank with Taylor Emerson and John O. Beck. The bank sued Fulton Emerson with Taylor Emerson and John O. Beck and alleged that he, by reason of his indorsement of the note, became liable and promised to pay the note, and secured judgment against him.

Appellants' proposition on the above facts is not quite clear, but we understand it to mean that by reason of the above facts the bank is not a holder of the note in due course.

A holder in due course, under the Negotiable Instrument Act, is one who took the instrument before it was overdue, in good faith and for value, and without notice of any infirmity. R. S. 1925, art. 5935, § 52. The statute merely reiterates the definition of a bona fide purchaser of negotiable paper as found in the decisions prior to the Uniform Act. We have found nothing in the act nor in the decisions that sustain appellants' above proposition. There is nothing in the record to indicate that the bank was not a holder in due course. Appellants submit that the note lost its negotiability by reason of the facts that the partnership between Taylor Emerson and John O. Beck became dissolved by the sale of the properties used in their partnership business, and that after a dissolution of the partnership a negotiation of the note, to make it negotiable, would require a complete indorsement of the note by both Taylor Emerson and John O. Beck, and that Beck having limited his indorsement to a part only of the note, the note lost its negotiability.

Article 5934, § 41, of the Uniform Act, referred to by appellants, as sustaining their contentions, provides: "Where an instrument is payable to the order of two or more payees or indorsees who are not partners, all must indorse, unless the one indorsing has authority to indorse for the others."

The same article of the statute, section 32, provides that the indorsement of the instrument must be an indorsement of the entire instrument, and not a part only of the amount payable.

The same article, by section 33, provides that in negotiating an instrument an indorsement may be special or in blank; and may also be either restrictive, qualified, or conditional.

Appellants' contention seems to be that by the limitation of liability to $1,200 placed on the note by John O. Beck, one of the payees, in his indorsement of the note to the bank, had the effect to destroy the negotiable character of the note, and that "there are no holders in due course." We do not concur in the construction placed by appellants upon the above article of the statute. In our opinion the article and the sections thereunder have reference solely to what is required in negotiating the instrument. The note is made payable to Taylor Emerson and John O. Beck; it recites the consideration for which it was given; they were the individual holders of the note and the liens on the properties mentioned; they individually sold, transferred, and assigned the note and the liens securing the same to the bank, and each as

indorser guaranteed the payment of the note. They each sign the note, and John O. Beck indorses the note to the extent of $1,200. There is a complete transfer and indorsement of the entire instrument, as distinguished from an indorsement of a part only of the instrument. The restriction or qualification by Beck is as to the entire instrument, and as to the extent of his liability on the entire instrument, as he could do under section 33, of the article 5934, without affecting the holders in due course.

We have reviewed the cases referred to by appellants in their brief, and we think they have no application here. As shown by the record before us, the note recites that: "The first installment being due and payable on or before the 15th day of January, 1932," etc.

The transcript of testimony filed in this court shows that the word "January," in the above quotation, was erased by a line drawn through it, and the word or abbreviated word "Feb." placed in brackets, immediately above the word "January."

The evidence shows that the original note was typewritten, with pencil mark struck the word "January" and the abbreviation "Feb." written with pencil above it.

Article 5939, § 124, provides: "Where a negotiable instrument is materially altered without the assent of all parties liable thereon, it is avoided, except as against a party who has himself made, authorized or assented to the alteration, and subsequent indorsers. When an instrument has been materially altered and is in the hands of a holder in due course, not a party to the alteration, he may enforce payment thereof according to its original tenor."

Section 125 of the same article makes an alteration which changes the date of the instrument a material alteration.

The original note was offered in evidence by the bank. Appellants made some objection (such as variance) to the introduction of the instrument in evidence, which objection was overruled by the court.

No objection to its introduction in evidence, however, was carried into the record by bill of exception.

We find no evidence in the record as to the time when, or by whom, the alteration was made, or whether the alteration was made with or without the assent of all the parties liable thereon. In the absence of any such proof we may not assume the existence of facts which would avoid the judgment. An alteration of the instrument as to its date,

though material, does not of itself void the instrument, since it may have been made by the parties liable thereon in its execution or with their assent.

■■ Appellants did not plead non est factum. The general rule for pleading defensive matter of an affirmative nature in an action on a note it is incumbent on the defendant to plead it; especially would that be the rule where the plaintiff, as here, pleads that the instrument sued on was executed by the defendants, etc. There is no exception to plaintiff's pleading, passed upon by the court, pointing out that the note sued upon shows on its face that the date in the note has been altered and that the petition does not allege that such alteration was made by defendants or with the assent of all the parties liable thereon, or facts that would relieve the note of the objections to its introduction in evidence now suggested.

Special defensive matters should be specially pleaded so as to admit the proof. There is material variance as to date between the instrument pleaded and the instrument offered in evidence, but the action of the court in overruling the objection to its introduction in evidence is not embraced in the statement of facts, nor stated in any bill of exceptions, and cannot be considered here.

We have concluded that the bank is a holder of the instrument in due course, and we need not further discuss propositions based upon the assumption that the bank is not a holder in due course.

■ On the trial H. L. Puckett, while testifying as a witness in his own behalf, was asked the question: "Do you know about what its (Texas Hardward Mutual Insurance Company's) business amounted to?"

To which question the witness would have answered: "Commissions of $250.00 per year."

The question was not limited to appellees other than the bank. We think it was not admissible as to the bank. As to other appellees, the question and answer was too speculative, and depended upon the supposition that the companies would continue the business, and other contingencies.

We think the record shows no error in excluding the evidence.

■ After stating certain representations made by Taylor Emerson and John O. Beck, as to the value of said insurance agencies, appellants further alleged, in substance, that the value of such business was further improperly reflected in the books kept by Tay-

lor Emerson and John O. Beck and representations, by omissions from said books relied upon by appellants, in a large amount of unpaid debts of said agencies, enumerated and itemized in their answer, which the uncontroverted proofs amounted, in the aggregate, to $6,000, all of which omissions and representations appellants allege to be actionable fraud. Appellants allege that they discovered the above-stated facts about the 1st of July, 1932, and immediately thereupon notified all parties of their unwillingness to proceed further in the performance of the transaction.

As against appellees Taylor Emerson and John O. Beck, appellants ask judgment, etc.

The record does not show that appellants Puckett assumed to pay such concealed or undisclosed debts, and in the absence from the record of an assumed personal liability of such undisclosed indebtedness or any part of it, or that it is a charge against the property conveyed to appellants, we cannot say as a matter of law or fact that such undisclosed indebtedness constitutes such actionable fraud as to relieve appellants of their obligation. In view of the record before us, it does not affect appellants' liability on the note to the bank. The record does not show any contract between the parties apart from the note sued on and the matters of liens and the conveyance of the real estate, referred to and made a part of the note, and by agreement of record all the parties involved here have been disposed of and the proceeds placed in the registry of the court subject, however, to the outcome of this suit.

We have reviewed the case of Parlin & Orendorff Co. v. Glover, 45 Tex. Civ. App. 93, 99 S. W. 592, referred to by appellants, and think the case has no application to the facts here.

Appellants complain of the instructed verdict against appellants in favor of Taylor Emerson and John O. Beck, and submit that such verdict and judgment does not support the judgment against appellants in favor of Taylor Emerson and Fulton Emerson.

■ Taylor Emerson and John O. Beck were the payees in the note executed by appellants, and, with Fulton Emerson, indorsed the note to the bank. Conceding the liability of appellants on the note and that the bank was the holder in due course, appellants were primarily liable as makers, and Taylor Emerson and Fulton Emerson were secondarily liable as indorsers. R. S. 1925, art. 5948, § 192.

There is no merit, under the facts, in appellants' proposition that at this time they are entitled to a rescission.

After a careful review of the entire record we have concluded that reversible error is not made to appear.

The case is affirmed.

## On Motion for Rehearing.

In our opinion we said there was nothing in the record to indicate that the bank was not a holder of the note in due course.

Appellants submit that in so holding we are in conflict with Taylor & Co., Inc., v. Nehi Bottling Co., 30 S.W.(2d) 494, 495, by the Dallas court. After a careful study of the case we think we are not necessarily in conflict with that case. The rule stated in the case depended upon certain facts established by the defense. The suit was upon a negotiable promissory note. Appellant pleaded that it was a holder in due course, that it took same in good faith for value and without notice of any infirmity or defect in the title.

The appellee joined issue on appellants' allegations and pleaded specially that appellant was not a holder in due course and that the consideration for the note had failed. In discussing the case Judge Looney, in referring to the facts found by the jury, said that the appellee (the maker of the note) "established its plea of failure of consideration," and when that was done "the burden shifted, and it was then incumbent upon plaintiff (appellant) to show that it was holder in due course, that is for value, and without notice of any vice in the instrument," and referred to section 59, of article 5935, of the Negotiable Instrument Act. The court, in the opinion, held that appellant had not discharged the burden indicated, and for that reason the case was affirmed.

There is, in our opinion, no determination of any fact by the court or jury in the instant case such as to make applicable the above portion of the Taylor & Co. v. Nehi Bottling Co. Case.

We are in harmony with the second part of the court's opinion in the case, as found in the opinion on rehearing.

The reading of the statement of the case of Hart v. West et al., 91 Tex. 184, 42 S. W. 544, referred to by appellant, sufficiently shows that it is not in point. Certainly there is no element of fact or evidence in this case that the note sued on was put in circulation through fraud or collusion between the bank, the holder of the note, or any of the indorsers. The statement of the law of the

case by the court is necessarily based on the facts found in the statement made by the court.

The uncontroverted record evidence here shows that the note sued on was executed on January 7, 1932, and sold to the bank on February 3, 1932, and that it was in May, 1932 (their answer alleges that about the 1st of July, 1932, the evidence shows appellants operated the property until July 20, 1932), before the appellants themselves with the books and all the opportunities for disclosing the facts discovered that the properties were not worth the value of the note they paid for the property. Appellants made five payments on the note; the last having been made in June, 1932.

The representations alleged to have been made by Taylor Emerson and John O. Beck, as inducing the purchase of the properties, are substantially as follows: That the renewable insurance business of the two agencies was shown on the books of the concerns to be and then amounted to the sum of $3,500 in the current year ending that day (January 7, 1932), and that the business was then and there worth $3,500. The allegation then is, that contrary to such representations, $2,203.20 of said business was not renewable and most of which was then already canceled. The evidence tends to show that the value of an agency for sale is based on the renewable fire insurance premiums on the books.

The real estate conveyed and the fixtures were worth about $700.

The evidence shows that an insurance business with $3,500 renewable insurance would be worth $3,500. The evidence tends to show, by the books, that the totals for each month of 1931 amounted to $2,203.20, with an excess commission of $95.28 charged off. To the question: "Do you know what the total business of all kinds that year (1931) was of the Big Lake Insurance Agencies? witness had answered: A total of $4,227 and some odd cents."

The evidence does not show the value of the agencies other than the above. To show the value of the agencies at the time the note was given appellants asked the appellant H. L. Puckett the questions: "Do you know whether the agency had any actual value at that time," to which the witness would have replied: "Do you know whether or not the agency had any value of any kind?" To which the witness would have made the same answer: "I do, it did not." It was objected on the ground that the witness could not differentiate between actual and market value after the witness had said it did not have a market value; and for the reason that witness had not qualified. The court sustained the objection. We think the witness should first have qualified to state a value or no value.

We doubt whether the statements of Taylor Emerson and John O. Beck, found in the evidence, as to the value of the properties amount to such misrepresentations of fact as would afford the relief asked. The law makes allowances for the tendencies of men to exaggerate the value or the merits of their property when offered for trade. This character of representation borders on opinion rather than the assertion of a fact, and the rule is that mere matters of opinion expressed in the formation of contract will not avoid them, though the opinion proves false. Simpkins on Contracts and Sales, p. 121. In Varner v. Carson, 59 Tex. 303, 305, Chief Justice Willie said: "It is no doubt a general rule, both in law and equity, that misrepresentations of value, either present or prospective, are mere matters of opinion, and no relief is afforded to those who are deceived by them."

The syllabus in Long v. Gilbert (Tenn. Ch. App.) 59 S. W. 414, a case in which a statement was made as to the value of bank stock, and misrepresentation as to value was shown, states: "Fraud cannot be based on a mere matter of opinion as to value stated in good faith."

To illustrate the lack of probative force for reason of uncertainty of a bare opinion in the instant case, witness H. L. Puckett testified that the property involved had no value, and yet the records show the property was sold to Mr. Greenwood for $2,000 to be credited on the judgment. Other evidence shows the real property and the fixtures, a part of the property involved, had a value of $700.

We have concluded that while some of the representations made tending to show value might be construed as statements of facts, the representations as to value, as a whole, might be taken as only expressions of opinion.

There are some expressions in the opinion not justified by the record, but we do not regard them as important or controlling and will not undertake to correct them.

However, we were in error in stating that the action of the court overruling the objection to the admission of the note in evidence on the ground of variance was not embraced in the statement of facts. On a more careful examination of the record we have concluded

that the record is such as to necessitate a consideration of the action of the court in overruling appellants' objection to the admission of the note in evidence.

The petition alleges that the note was executed and delivered on January 7, 1932. The note offered in evidence shows the date of its execution to be January 7, 1932. The due date of the first installment was stated to be on or before the 15th day of January, 1932. On that installment date January was erased by a line drawn through it and the abbreviation "Feb." written with pencil above it.

The objection to the introduction of the note in evidence was as to the alteration in the note without explanation as to when or by whom the alteration was made, "and it does not agree with the copy filed with plaintiff's petition," that there is a variance between the original note (then offered) and the copy filed with the petition. The objection was overruled and the original note was put in evidence, to which appellants excepted.

The proposition (No. 5) presented is: "The alteration, apparent on the face of the note here in evidence, destroyed all possibility (if any) of its ever being rendered negotiable."

It will be noted that the proposition does not suggest any ground of variance between the copy of the note filed with the petition and the original note then being offered in evidence, but suggest only that the alteration noted destroyed the negotiability of the note.

But we will consider its admissibility and the effect of the alteration.

The petition does not, by any statement, make the note a part of the petition so as to bring it within the rule that an instrument which is sued upon, if made a part of the petition and filed with it, controls and cures any misdescription of it in the body of the petition, as announced in Longley v. Caruthers, 64 Tex. 287; Varn v. Arnold Hat Co. (Tex. Civ. App.) 124 S. W. 693, and other cases. But we hardly think, and it is not contended, that the change, not of the date of the note, but of the due date of an installment payment, operated as a surprise to appellants; nor do we think that the alteration could have misled the appellants to their prejudice, and they do not so claim. What we have said applies only to the objection to the admissibility of the note on the ground of variance.

The change of the date of the first installment payment presents a more serious question on the question as to its effect on the note. While we think the change in the date from January to February might have been to correct an error as to date and to state the correct and intended date, still it is an unexplained change in the date. While the statute, section 125 of article 5939, provides that a negotiable instrument is discharged by any alteration which changes the date, a change made by consent, as in Cottle v. Sanders (Tex. Civ. App.) 40 S.W.(2d) 979; Funkhouser v. Chemical Bank & Trust Co. (Tex. Civ. App.) 53 S.W.(2d) 146, 151, or innocently made without any actual intention of perpetrating a fraud upon the maker, as in Stephens v. Anson Motor Co. (Tex. Civ. App.) 21 S.W.(2d) 699, or where the alteration was immaterial, Vackar v. Supreme Lodge (Tex. Civ. App.) 52 S.W.(2d) 655, and other cases we have reviewed, the alteration may not discharge the instrument. But the rule is well established that a party offering an instrument must account for its condition, Cottle v. Sanders, supra; the presumption being that the party in possession made the alteration. Occidental Life Ins. Co. v. Jamora (Tex. Civ. App.) 44 S. W.(2d) 808, 811. The alteration in date of payment of the installment being unexplained in the record, and possibly being a material change, Caldwell National Bank v. Reep (Tex. Civ. App.) 188 S. W. 507, we have concluded that on that ground the motion should be granted, the case be reversed and remanded, and it is so ordered.

Reversed and remanded.