## OCCIDENTAL LIFE INS. CO. v. JAMORA.
### No. 3699.

Court of Civil Appeals of Texas. Amarillo. Dec. 16, 1931.

Madden, Adkins, Pipkin & Keffer, of Amarillo, for appellant.

Monning & Akin, of Amarillo, for appellee.

JACKSON, J.

The plaintiff, Olive E. Jamora, a widow, instituted this suit in the district court of Potter county, Tex., against the defendant, Occidental Life Insurance Company, a corporation, to recover on a life insurance policy issued by the defendant to Julius R. Jamora, husband of the plaintiff.

The plaintiff alleges that on May 25, 1927, the defendant issued the said policy to Julius R. Jamora, naming her as beneficiary, and containing an agreement to pay her the sum of $2,000 in the event her husband died during the existence of the policy.

She alleges:

That her said husband died on the 25th day of October, 1930, on which date said policy was in full force and effect; the insured in all respects having complied with the conditions and provisions thereof. That within a reasonable time after the death of her husband she furnished the defendant with proof of the death of the insured.

That the premium on the policy was payable quarterly, and all of the premiums had been paid up to and including May 25, 1930. That such payments covered a period of three full years and one quarterly premium on the fourth policy year. That the loan value of the policy at the end of the period for which all premiums had been paid greatly exceeded the quarterly premium of the policy due August 25, 1930, and the loan value of the policy under the automatic loan feature should be applied to the payment of said quarterly premium, which would continue the policy in full force and effect beyond the date of the death of her husband, as there was no indebtedness chargeable against the policy on August 25, 1930.

That she is informed that her husband, on or about the 14th day of July, 1930, executed a policy loan agreement for $128, assigning the policy to the defendant as collateral security for the payment of such loan. That said loan agreement was mailed to the defendant at its office in Albuquerque, N. M., but was thereafter altered by the defendant without the knowledge and consent of the insured. That the amount provided for in the loan contract was changed from $128 to $80. That such change was a material alteration in the loan agreement, and rendered it unenforceable, null, and void, and, because such loan agreement was void, there was no indebtedness chargeable against the policy at the date of her husband's death.

That by the terms of the policy the defendant was permitted to deduct from the loan value thereof the current year's premium remaining unpaid, and advised the insured by letter (a copy of which is made a part of the plaintiff's petition) that it would so deduct such premium before the loan was made, and, if such premium due August 25, 1930, was not paid, it was because the insured relied on such conditions, believing the defendant had deducted the premium for the fourth policy year from the loan value of the policy at the time the loan was made, and the defendant is estopped to urge a forfeiture of the policy for the nonpayment of the quarterly premium due August 25, 1930.

The plaintiff alleges in the alternative that, if she is mistaken as to the alteration in the loan agreement rendering it void, nevertheless, as thirteen quarterly premiums had been paid, the reserve of said policy, computed as therein provided, was $104.42, and that said amount, after making the legal deductions from such reserve, was more than sufficient to carry the policy for the face value thereof, as extended insurance, to a time beyond the date of the death of the insured, as the amount of the loan, if valid, did not exceed the loan value of the policy.

Plaintiff also alleges that, in the event she is mistaken as to the effect of the alteration of the loan agreement and as to the effect and amount of the reserve, she then pleads in the alternative that the defendant waived any forfeiture of the policy on account of the nonpayment of the quarterly premium due August 25, 1930, by negotiations with the insured relative to the said loan; that Lawrence F. Lee, president of the defendant, with full knowledge of the failure to pay the premium, on August 25th, and of the loan agreement, wrote the insured a letter on October 13, 1930, recognizing the continued validity of the policy, and the insured then had a reasonable time after the receipt of such letter within which to begin repaying such loan, a copy of which letter is attached to, and made a part of, plaintiff's petition; that the insured died before the expiration of a reasonable time, and, by reason of such waiver, the policy was in full force and effect at the time of the death of the insured.

The plaintiff sufficiently alleges the facts upon which she relies to recover reasonable attorney's fees, which she says is the amount of $750.

The defendant answered by a general demurrer, numerous so-called special exceptions, and a general denial.

The jury, in response to special issues submitted by the court, found substantially that the policy was issued by the defendant May 25, 1927; that said policy was delivered to Julius R. Jamora at Amarillo, Tex.; that the insured died October 25, 1930; that the policy loan agreement dated July 14, 1930, was changed from $128 to $80, after it was executed by the insured; that such change was

made without the knowledge or consent of the insured, and that such change was made by the defendant; that on August 25, 1930, there was a net reserve on the policy, after deducting the loan of $80, and the surrender charge thereof, and that such reserve was sufficient to extend the insurance up to and including the date of the death of the insured; that the defendant intended to recognize the policy of insurance as still in force and effect at the date of the death of the insured; that the plaintiff demanded of the defendant payment of the amount owing to her under the policy, and the defendant failed to make such payment within thirty days after such demand, and that the sum of $600 was a reasonable attorney's fee. On these findings judgment was rendered against the defendant and in favor of plaintiff for the sum of $2,-762.80, with interest thereon from the date thereof at the rate of 6 per cent. per annum, with costs of suit, from which judgment this appeal is prosecuted.

■ The appellant assigns as error the action of the trial court in overruling its general demurrer to plaintiff's petition. This contention is not tenable, as the petition is good against a general demurrer.

■ Appellant also assigns as error the action of the trial court in overruling its so-called special exceptions, which are but amplifications of the general demurrer, but it is contended that certain paragraphs of plaintiff's petition alleging that the defendant wrote the insured that it would deduct the balance of the current year's premium from the loan value of the policy, and alleging that by letter defendant waived its right to forfeit the policy by reason of the nonpayment of the premiums August 25, 1930, are insufficient because they failed to set out the contents of such letters, and do not apprise appellant of appellee's contentions, and are but conclusions of the pleader.

It will be noted that the appellee attached to and made a part of her petition a copy of each of the letters referred to in her pleading. The copy of the letters attached to the petition and made a part thereof became a part of the declarations in the petition, and both are construed together to determine whether or not a cause of action has been sufficiently alleged. Port Huron Engine & Thrasher Co. et al. v. McGregor et al., 103 Tex. 529, 131 S. W. 398; Cox v. Sinclair Gulf Oil Co. (Tex. Civ. App.) 265 S. W. 196, and authorities cited.

The appellant, by several assignments which we will consider together, challenges as error the action of the trial court in refusing to give its requested peremptory instruction, and in submitting, over its objections, special issues to be determined by the jury, because the uncontroverted evidence shows that the policy had lapsed prior to the death of Julius R. Jamora, the insured, on account of the failure to pay the quarterly premium due August 25, 1930.

The record shows without dispute that the policy was issued and delivered as alleged; that the premiums were payable quarterly; that the premium due May 25, 1930, was paid, and that the insured died October 25, 1930; that the last premium paid was the first quarterly premium due on the fourth policy year of the insurance contract.

The finding of the jury that the loan agreement had been altered by the defendant after it was executed by the insured, and without his knowledge or consent, is said by appellant to be without support in the testimony.

It is conceded that the agreement had been altered by erasing the words "One Hundred Twenty-Eight and no/100" as the amount of the loan, and inserting in lieu thereof "Eighty ($80.00) Dollars"; that such change had been made with a typewriter on the fourth, tenth, and eleventh lines of the agreement. The record shows that on July 9, 1930, the insured addressed a letter to the appellant at Albuquerque, N. M., asking that he be furnished with blank applications for a loan on his policy; that on July 10th the office at Albuquerque, N. M., in reply to the insured's letter, advised him that, as the first quarterly premium on the fourth policy year had been paid, he was entitled to a loan of $128, less interest to May 25, 1931, and less the August and November, 1930, and the February 25, 1931, quarterly premiums, making total deductions of $76.02, and leaving a net cash on the loan $51.98; that a loan agreement was forwarded with this letter, with instructions to return it and the policy to Albuquerque, and both would be sent to the head office, which is located at Raleigh, N. C.; that the insured signed the loan agreement in the presence of two witnesses and forwarded it to Albuquerque, N. M., from whence it was sent to the head office at Raleigh, N. C. The two gentlemen who witnessed the execution of the loan agreement by the insured testified that he made no change in the loan agreement while they were present, that they made no change therein, and that, if it had been changed, they did not observe it. The testimony is that the insured was unable to calculate interest and could not operate a typewriter. Mr. Noneman, secretary of appellant, testified that, when the loan agreement reached the home office at Raleigh, N. C., the alterations had been made, but that he did not know who made them; that thereafter the company issued its check to the insured for the sum of $76, which was cashed by him. The appellant retained possession of this loan agreement up until the date of the trial, and offered it in evidence.

■■ If it is admitted that an instrument has been altered, the party seeking to explain such change must establish such facts by a preponderance of the testimony. A mere de-

nial by him and offering facts showing a possible explanation are not sufficient. The appellant was asserting rights under this altered instrument, and, as it had been in its possession, a presumption arises that the alteration was made by appellant, and that such changes were made wrongfully. 2 Tex. Jur. 714.

"Even where there is uncontradicted testimony by a party that an alteration was not made by him, the circumstances may be such that the case should go to the jury." 2 Tex. Jur. 716.

■ It was clearly the province of the jury upon the evidence to determine whether the alteration was made after the instrument's execution and whether it was made without the consent of the insured, and also whether such alteration was made by appellant. 2 Tex. Jur. 716.

■ Under this testimony and the law, it is our opinion that the court was warranted in submitting the issue, and the finding of the jury that the instrument was altered by appellant after its execution has sufficient support in the record.

■ No contention that the change in the loan agreement from the amount of $128 to $80 was not a material alteration can be maintained. 2 Tex. Jur. 704, and authorities cited; section 125, Negotiable Instruments Law, article 5939, Rev. St.

It is settled that a material alteration in an instrument renders such instrument void and unenforceable in determining the rights of the parties to such instrument. 2 Tex. Jur. 693, and authorities cited.

The appellant insists that the alteration of the loan agreement is immaterial, even if made by the insurer, because the policy in question complies with the requirements of article 4732 of the Revised Civil Statutes, and provides that: "Upon failure to pay a premium on or before the date when due, this policy shall become null and void without any action or notice by the company and all rights shall be forfeited to the company except as to the options herein stated." And, inasmuch as the quarterly premium due August 25, 1930, was not paid, the policy under its terms had lapsed at the time of the death of the insured.

■ It is immaterial whether the requirements of the statute are incorporated into the policy, as appellant asserts, or whether such requirements are not contained therein as claimed by appellee, because, under the law, the statute becomes a part of the contract of insurance. First Texas Prudential Ins. Co. v. Sorley (Tex. Civ. App.) 272 S. W. 346; Camden Fire Insurance Ass'n v. Harold E. Clayton & Co., 117 Tex. 414, 6 S.W.(2d) 1029.

Article 4732 provides that no life insurance policy shall be issued or delivered in this state, unless it contains certain provisions.

Subdivision 6 of said article requires that a life insurance policy shall obligate the insurer, while the policy is in force, after three full year premiums have been paid, to advance to the insured on proper assignment of the policy, and on the sole security thereof, at a specified rate of interest, a sum equal to the legal reserve and any accumulated dividend, at the end of the current policy year, less not exceeding 2½ per cent. of the amount of the policy and such dividend. That the insurer may deduct from such loan value any existing indebtedness on the policy.

Subdivision 7 of said article reads, in part: "A provision which, in event of default in premium payments, after premiums shall have been paid for three full years, shall secure to the owner of the policy a stipulated form of insurance, the net value of which shall be at least equal to the reserve at the date of default on the policy, and on any dividend additions thereto, specifying the mortality table and rate of interest adopted for computing such reserve, less a sum not more than two and one-half per cent. of the amount insured by the policy and of any existing dividend additions thereto, and less any existing indebtedness to the company on the policy. Such provision shall stipulate that the policy may be surrendered to the company at its home office within one month from date of default for a specified cash value at least equal to the sum which would otherwise be available for the purchase of insurance, as aforesaid," etc.

Subdivision 8 requires a table showing in figures the loan values and options available, etc., and subdivision 9 requires a provision that, in the event of default in the premium payments, the value of the policy shall be applied to the purchase of other insurance.

This policy provides, under the options available, that the insured may have the policy continued in force for its face amount as nonparticipating, term insurance, for the period specified in column 2, and also contains a table of loan, surrender value, and extended insurance, which shows:

"Column Two
"Extended Insurance
"Years    Days
"4          60"

—after the insurance has been in effect for a period of three years, and any indebtedness to the company on account of or secured by the policy, etc., shall be deducted from the loan value under the policy.

■ The law specifies the conditions under which the insurer is required to "advance * * * a sum equal to * * * the legal reserve at the end of the current policy year on the policy," and that "no condition other than as herein provided shall be exacted as a prerequisite to any such advances"; that such "reserve at the date of default on the policy"

shall be less, among other items "any existing indebtedness on the policy." Amicable Life Insurance Co. v. White (Tex. Civ. App.) 38 S.W.(2d) 860.

Obviously, these provisions of the law with which the policy complies means less any indebtedness created by "proper assignment of the policy" and originating as specified in the statute. This policy was assigned in the loan agreement, which was void because materially altered. Hence there was no "indebtedness to the company on the policy," and insurance for the face value of the policy continued beyond the date of the death of the insured.

■ The appellant contends that the court erred in submitting to the jury the question of waiver, because the testimony was insufficient to authorize the submission of such question and not sufficient to support the finding of the jury thereon.

The record discloses that the insured died October 25, 1930; that immediately prior thereto, on October 13th, the president of the insurance company wrote the insured that Mr. Babson, the noted economist, recently said, " 'I do not recommend borrowing on life insurance policies,' " etc. "When it was necessary that you borrow on your policy in this company or pay premium by making a loan, it was a pleasure and a privilege for us to be of service to you. Perhaps you have already promised yourself to make every effort to restore your policy to its full value by repaying this loan. There is a grave danger when your policy is 'mortgaged' if you have drawn all the cash value. * * * Here is the way by which you can get this 'mortgage' off your most valuable possession. You may send us monthly installments of any amount you can conveniently spare from $5.00 up. As your account is credited, you will get a refund of unearned interest, which will also be applied in reduction of this indebtedness. If you will tell us on the enclosed form how much you can save each month for this purpose and return it in the self-addressed envelope, we shall be glad to send you monthly reminders of your intention. Why not send $5.00 now as a start? Remember a loan on your policy is a loan from your beneficiaries. Return what is rightfully theirs with our cooperation like many of our policy holders who are already taking advantage of this monthly repayment plan."

It will be noted this letter was written twelve days before the death of the insured. There is no statement in the letter that a forfeiture has occurred or that the company will insist upon a forfeiture. It is clearly implied that the policy is still valid and in existence, and in our opinion is sufficient to authorize the submission of the question to the jury and the finding of the jury thereon. Underwood v. Security Life & Annuity Co. of America, 108 Tex. 381, 194 S. W. 585.

■ The appellant presents as error the action of the court in submitting the issues whether the policy was issued and delivered and whether the insured was dead, and, if so, the date of his death, because such issues were established by the undisputed testimony.

The appellee had necessarily alleged all these facts, and they had been put in issue by the appellant's general denial. While it is not necessary, or even proper, to submit uncontroverted issues, the submission of said issues in this case does not constitute reversible error. Young Men's Christian Association v. Jasse et al. (Tex. Civ. App.) 183 S. W. 867.

The appellant contends that the court erred in submitting to the jury whether or not there was a net reserve on the policy after deducting the loan of $80 and the surrender charge, because such issue submitted a mixed question of law and fact, and the reserve value of the policy is determined from the contract, which was in writing, and the construction of same was for the court.

Inasmuch as we have held that under this record there was no indebtedness chargeable against the policy by reason of the loan agreement, and that the company had waived its right to assert a forfeiture, the above assignment becomes immaterial, and will not be discussed, because, if we are correct in either of such holdings, the judgment must be affirmed.

The judgment is affirmed.