WHITE *v.* STANDARD LIFE INS. CO.

(In Banc.   May 14, 1945.)

[22 So. (2d) 353.   No. 35848.]

326

**W. A. Geisenberger,** of Natchez, for appellant.

Brandon, Brandon & Hornsby, of Natchez, for appellee.

**Roberds, J.,** delivered the opinion of the court.

On July 1, 1940, appellee issued its policy on the life of James H. White for $400, the mother of the insured, appellant here, being the beneficiary. The policy contains this provision: ''Military and Naval Service:—The Insured may serve in the Army or Navy of the United States or in the National Guard in time of peace or for the purpose of maintaining order in time of riot; in time of actual war, however, a written permit must be obtained from the Company for such service, and an extra premium paid. Should the insured die while enrolled in such service in time of war without such permit, the Company's liability will be limited to the reserve on this Policy at the time of death.''

On November 10, 1942, James H. White was inducted into the military service of the United States, at which time this country was at war with Germany and Japan. The insured died February 19, 1944, while in, and as a result of, such service. From the issuance of the policy to the death of the insured appellant had paid a weekly premium of 22 cents thereon. The collecting agent knew the insured was in military service. No permit was granted by appellee, or requested by appellant, for the insured to enter such service, and appellee to become liable in case of his death during that time, and, of course, no extra premium was claimed by appellee or paid by appellant.

Carrie White made due proof of the death of the insured. On March 17, 1944, appellee delivered to appellant check for the amount of the reserve under the policy, plus one premium which had been paid after the death of the insured; whereupon appellant executed the usual receipt and release of further liability. On May 1, 1944, appellant, through her attorney, returned the check by mail to appellee, and, later, appellee paid the money to the clerk of the circuit court as a tender thereof to appellant. Carrie White brought this suit for $400 and interest

thereon. She was the only witness on the trial. She testified that the collecting agent told her on at least two occasions, when she paid him the premiums, that if the insured should die while in the military service the insurance company would be liable for the full amount of the policy. She also said she understood the release which she signed, and knew the amount then being paid was in full discharge of all liability under the policy. The plaintiff rested on her testimony, the pleadings and exhibits; whereupon defendant moved to exclude the evidence of plaintiff, and for a peremptory instruction, which motion the court sustained. A verdict was returned and a judgment entered accordingly, from which this appeal is taken. Under these circumstances the testimony of Carrie White must be accepted as true.

The main contention of appellant is that the military clause is void, because it does not comply with, and is violative of, sections 5680 and 5681, Mississippi Code 1942, in that the amount of the extra premium to be charged in case permission is granted insured to enter the military service is not set out in the policy. Section 5680, after defining what is life insurance business, provides that no insurance company shall issue an insurance contract, "which does not distinctly state the amount of benefits payable, the manner of payment and the consideration therefor"; and if it does do so, it is liable to the state for $50 in each case. Section 5681 prohibits any life insurance company making any distinction or discrimination between policyholders in the same class in respect to premiums, rates, dividends, benefits or in other terms of the contract; "nor shall any such company or any agent thereof make any contract of insurance or agreement as to such contracts other than are plainly expressed in the application and policy issued thereon . . .," nor make any rebate of premium or grant any special favor in dividends for other benefits, "or any valuable consideration or inducement whatever not specified in the policy . . ." Appellant contends that failure of the

policy under consideration to expressly set out the premium rate which will be charged in case permission to enter the military service is granted, renders void the exemption from liability therein stated. In support of that contention it is urged that such failure enables an insurance company to arbitrarily fix premiums and rates, and thereby discriminate at its discretion between policyholders in the same class, in violation of the foregoing sections.

No case in point is cited by either counsel, and we have found none. The cases of New York Life Insurance Co. v. Blaylock, 144 Miss. 541, 110 So. 432; Lamar Life Ins. Co. v. Minor, 170 Miss. 223, 154 So. 542; New York Life Ins. Co. v. Boling, 177 Miss. 172, 169 So. 882, 111 A. L. R. 967; Mutual Life Ins. Co. v. Nelson, 184 Miss. 632, 184 So. 636, 186 So. 837; New York Life Ins. Co. v. Nessossis, 189 Miss. 414, 196 So. 766; Anderson v. New York Life Ins. Co., 193 Miss. 1, 6 So. (2d) 293; and Arendt v. North American Life Ins. Co., 107 Neb. 716, 187 N. W. 65, cited by able counsel for appellant, have little, if any, bearing upon this question. It is simply a problem of construing our statutes as applied to the existing facts.

We have concluded that our statutes have no application to this situation. This military clause is an exemption of appellee from liability. No liability is assumed under the stated circumstances. There is no contract therefor. Creation of liability would require another contract. That contract might, or might not, be made. The company is under no duty or obligation to make it. The insurer could decline to do so without reason. Moreover, under the circumstances here it is not perceived just how it would be possible for the insurer to fix in advance a just, reasonable and fair premium rate, commensurate with the risks involved, applicable to all persons thereafter entering military service. Such premium should bear a reasonable and just relation to the risk for which it is paid. That risk depends upon the type of war in which the insured may engage, and the type of service

he may perform in that war. For illustration, suppose by some possibility the United States should become engaged in a war with Cuba. No one could say that the risk to participants in that case would compare with the dangers to those engaged in the present appalling conflict with the Axis powers. Suppose a soldier in the present war is engaged in the ground service of airplanes, or is in the Adjutant General's office, stationed in the United States. Could the danger to him be compared with that of a commando or marine invading Okinawa? It would not be possible for an insurance company to visualize and appraise such risks in advance, and stipulate a fair and just premium properly apportioned and based thereon. It is not contended by appellant that such exemptions generally are not valid. 29 Am. Jur., p. 695, Sec. 911. The attack is limited to the claimed violation of our statutes, as above stated. We think the contention is not well taken.

It is further urged by appellant that appellee is liable for the full amount of the policy because of the representations of the collecting agent, when collecting premiums, that in case of death of insured the full amount would be paid. The policy contains this clause: "Entire Contract:—This policy constitutes the entire agreement between the Company and the insured and the holder or claimant thereof. Its terms cannot be changed or its conditions varied except by the Company's Endorsement hereon signed by the President, a Vice-President or Secretary. Agents (which term includes also Managers and Superintendents) are not authorized to make, alter or discharge contracts, to waive forfeitures, or to receive premiums on this Policy more than four weeks in arrears or to receipt for same in the Receipt Book."

Not only does this provision expressly deny to a collecting agent the power to modify or change the terms of the policy, but the president, vice-president and secretary can only do so by written endorsement on the policy. In other words, this provision confers the power

on named officials and denies it to all other persons, and prescribes the manner of its exercise by those who have the power. In the case at bar the person who undertook to assume liability for military death not only did not have the authority, but did not attempt to adopt the prescribed method of exercising it, had he possessed it. It is said in 29 Am. Jur., p. 631, Sec. 827, ". . . the decided weight of authority is that a mere collecting agent has no power to vary, alter or modify a contract of insurance, or to extend the time of payment, especially where the notice of the extent of the agent's authority is brought home to the other party". McCoy v. National Life Ins. Co., 192 Iowa, 127, 182 N. W. 659. The denial of such authority in the collecting agent is in the policy itself, and the policy was in the possession of appellant. She had notice of his lack of authority. New York Life Ins. Company v. O'Dom, 100 Miss. 219, 56 So. 379, Ann. Cas. 1914A, 583. It will be noted this is not an action to recover premiums paid, or to cancel the policy, because of fraud. The effort here is to create, by oral representation, a liability expressly excepted in the policy, and base recovery on the liability so created. That cannot be done, as here attempted.

It is also urged that by acceptance of the premiums, with knowledge that insured was in the military service, the company waived the exemption from liability for death while in such service. It was not contemplated that the premiums paid would cover the hazards of military duty. It is not a case where acceptance of dues, with knowledge of violation of the contract, constitutes a recognition of the continued valid existence thereof. Insured, by performance of military service, was not violating the contract. He was doing a thing permitted by the policy, but for which the insurer assumed no liability, and for which no premium was required or paid. Nor do the facts bring this case within the principle that a forfeiture is waived where an insurance company has knowledge of facts that would work a forfeiture. The

company had the right to exempt itself from liability for military service. Insured and beneficiary had the privilege of paying the dues and continuing the policy in force while insured was in military service, notwithstanding the exemption from liability for death while in such service. Payment of dues was not inconsistent with keeping the policy alive. The duration of his service was limited. He might have become disabled, or his health become impaired, so that he could not obtain insurance after leaving the service. The reserve was accumulating on the policy. It has loan, cash surrender and endowment features. It can be easily understood that the beneficiary might desire to maintain the policy regardless of the exemption. There was nothing inconsistent between the payment of the premiums and the existence of the exemption. The acceptance of the premiums by the company, with knowledge the insured was in the military service, was not a waiver of the exemption under the circumstances here shown. Caldwell v. Illinois Bankers' Life Association (Tex. Civ. App.), 226 S. W. 747; Reid v. American National Assurance Co., 204 Mo. 643, 218 S. W. 957; Miller v. Illinois Bankers' Life Association, 138 Ark. 442, 212 S. W. 310, 7 A. L. R. 378; Marks v. Supreme Tribe of Ben Hur, 191 Ky. 385, 230 S. W. 540, 15 A. L. R. 1277.
Affirmed.