# MAY, 1946

W. B. HATCH ET AL V. GEORGE E. TURNER, INDIVIDUALLY AND AS ADMINISTRATOR.

No. A-788. Decided March 13, 1946.
Rehearing overruled May 1, 1946.
(193 S. W., 2d Series, 668.)

18

*O. B. Fisher*, of Paris, for petitioners.

The trial court erred in overruling plaintiffs motion for an instructed verdict and in sustaining a verdict rendered for the defendant, and the Court of Civil Appeals erred in not so holding. The Court of Civil Appeals also erred in holding that the

acceptance from the insurance company by Hatch of returned premiums in the amount of $42.80 and crediting same on insured's indebtedness constituted a compromise and settlement of any claim under the policy which the representative of the insured's estate was entitled to assert, and that the acceptance of the return of the insurance premium constituted a surrender of the policy binding on the estate of the deceased. Also in holding that the exception set out in the rubber stamp endorsement on the policy was not within the terms of the specific excepions authorized by Article 4733, subd. 3 which limited the isurance company's liability to the return of the premiums paid. Standard Acc. Ins. Co. v. Thompson, 139 Texas 116, 161 S. W. (2d) 786; Burns v. American National Ins. Co., 280 S. W. 762; United States Automobile Assn. v. Miles, 116 Texas 138, 161 S. W. (2d) 1048.

*Prentice Wilson,* of Dallas, for respondent.

In reply to the propositions of petitioners cited: Cecil v. Wise, 109 S. W. (2d) 214; Llano Granite & Marble Co. v. Hollinger, 212 S. W. 151; 33 Tex. Jur. 718, sec. 29; 21 R. C. L. 676, sec. 38.

MR. JUSTICE BREWSTER delivered the opinion of the Court.

On May 7, 1941, George E. Turner, Jr., of Honey Grove, Texas, a flying cadet in the air forces of the United States stationed at Stockton, California, bought an automobile from Hatch Chevrolet Company, a corporation, of that place, conditioned on his final payment of a purchase price balance of $1,188.08 in 24 monthly installments.

As a part of the transaction, Turner purchased a life insurance policy from a California company in the sum of $1,188.08, at a premium of $42.80. This policy was for the benefit of both Turner and Hatch Chevrolet Company and was payable to the latter as "creditor of George E. Turner." When delivered to the creditor it carried on its back side, impressed with a rubber stamp, this condition:

"This policy is issued on the express and essential condition that notwithstanding anything contained in any other provision hereof to the contrary, the amount payable hereunder shall be limited to the sum of the premiums paid hereon or the face amount of insurance, whichever may be the less, in the event that death occurs from any cause while the insured is engaged in service in the air forces of any country at war or within six months after the termination of such service."

On December 10, 1941, two days after the United States declared war on Japan, Turner, then a lieutenant in the United States Air Forces attached to the army gunnery school, was killed in an airplane accident at Los Vegas, Nevada, while on observation duty.

At the time of his death he owed a balance of $869.20 on the automobile note, and nothing was thereafter paid on it.

On March 5, 1942, after some negotiation with the insurance company, Hatch Chevrolet Company accepted a remittance of the $42.80 paid as a premium for the policy, credited it on the note and surrendered the policy, all without the consent of Turner's legal representative.

George E. Turner, father of the deceased, was appointed administrator of the latter's estate, and took possession of the automobile in May, 1942.

On November 30, 1942, Hatch Chevrolet Company was dissolved and all its assets and liabilities passed to three of its stockholders, Hatch et al.

Thereafter Hatch et al, petitioners, filed this suit against respondent George E. Turner, individually and as administrator, asking that the balance of $869.20 be fixed as a preferred debt and lien against the automobile to be certified to the probate court for payment in the administration proceedings. In the alternative, they sought a personal judgment against respondent.

Turner answered that the proceeds of the insurance policy would have paid the balance due Hatch et al had they not wrongfully surrendered the policy to the insurance company.

When the testimony was in, the trial court instructed a verdict for Turner and entered judgment accordingly, which was affirmed by the court of civil appeals, Associate Justice Harvey dissenting. 191 S. W. (2d) 701.

The parties agreed that the rubber-stamp provision above quoted was on the policy when it was delivered, respondent reserving the right, however, to contend that the provision is not a part of the policy.

■ Respondent urges that the provision cannot be considered as "printed," under a recitation on the face of the policy that the

"provisions and conditions *printed* on the reverse side hereof are a part of this contract as fully as if recited over the signatures hereto." (Italics ours.) Since the provision was on the policy when it was delivered, we are unable to see what difference it could make to the parties concerned whether it was "printed" with a rubber stamp or in the more conventional manner. The letters used in the stamped provision are very similar to those used in the other provisions except that they are larger. Respondent cites no authority in support of his contention and we have found none. While the precise question before us was not involved, it was held in Allison v. Hamic et al (Civ. App.) 226 S. W. 483, that the words "Payable at Marfa, Texas," stamped at the head of a contract with a rubber stamp, were an integral part of the contract and determinative of the place of its performance. And stamped provisions have been given controlling effect when in conflict with regularly printed provisions of the policy. New York Life Ins. Co. v. Hiatt, 140 Fed. (2d) 752; Givens v. Aetna Life Ins. Co. of Hartford (Mo. App.) 59 S. W. (2d) 761; and Trousdel v. Equitable Life Assur. Soc. (Cal. App.) 130 Pac. (2d) 173. To say that the rubber stamp provision was not a printed condition would be to make a nicer distinction than the facts of this case warrant.

Petitioners contend that the provision defeats all insurer's obligations under the policy except to return the premium.

■ Undoubtedly the parties to an insurance contract may make it in any legal form they desire and, in the absence of statutory prohibitions, insurers may limit their liability and impose whatever conditions they please upon their obligations not inconsistent with public policy. That the conditions may be harsh does not affect the rule, as no one is compelled to deal with the insurers on basis of such conditions. See 29 Am. Jur., Insurance, Sec. 166, p. 184. Under this rule, "War clauses, such as those providing for the forfeiture of the policy on insured's entering into any military or naval service without insurer's consent, * * are valid and enforceable." 45 C. J. S., Insurance, Sec. 610, p. 445. In the annotation appearing in 137 A. L. R., 1263, it is said that the validity of a provision "entirely releasing the insurer from, or in some way restricting, its liability under the policy, because of the connection of the insured with military or naval forces or because of his entry into military service, is almost universally recognized."

■■ Under these statements of the general rule, we think the validity of the provision under review is to be determined under

Section 3, of Art. 4732, R. S., 1925. That article sets out the provisions which every life insurance policy issued and delivered in this state must contain. Under Section 3 it must provide that the "policy, or policy and application, shall constitute the entire contract between the parties and shall be incontestable not later than two years from its date, except for nonpayment of premiums and *which provision may or may not, at the option of the company, contain an exception for violation of the conditions of the policy relating to naval and military services in time of war."* (Italics ours.) Although the incontestable clause does not appear in Turner's policy, that circumstance is wholly immaterial because the statute makes the clause a part of the policy, whether written therein or not. Occidental Life Insurance Co. v. Jamora (Civ. App.) 44 S. W. (2d) 808; American National Life Insurance Co. v. Foster, 133 Texas, 588, 130 S. W. (2d) 287; Camden Fire Insurance Association v. Clayton & Co., 117 Texas, 414, 6 S. W. (2d) 414. Therefore, the rubber-stamp provision must be viewed as an exception to the policy's incontestability based on military service in time of war. Under it the insurer was not to be liable except to return premiums paid, if the insured died from any cause while engaged in service in the air forces of any country at war. Obviously, on May 7, 1941, as a flying cadet in the air forces of the United States, he was not so engaged. When he died, two days after the declaration of war on Japan, he was a lieutenant in the air forces of the United States, attached to an army gunnery school, and was on observation duty. Under those circumstances he clearly was in the military service in time of war, as contemplated by Sec. 3, of Art. 4732, supra. Clearly, also, his death occurred not only *while* he was engaged in service in the air forces of a country at war but also *because* of such service. The insurer had imposed a condition against its liability for his death under those circumstances, and Turner had agreed to that condition. It was a condition which the statutes of this state permitted the insurer to impose and the insured to accept. Therefore, we hold that the liability of the insurer under the policy was satisfied when it remitted the $42.80 premium to Hatch Chevrolet Company, "creditor of George E. Turner." See Field v. Western Life Indemnity Co. (Civ. App.) 227 S. W. 530 (er. ref.). In that case the policy provided that it should be incontestable after one year except that the insurer's liability would be limited to premiums paid if the insured should ever engage in military or naval service in time of war without permission of the insurer. Wtihout such permission, the insured became a first lieutenant in the medical corps of the United States Army in service in France, where he committed suicide

while insane. It was held that the insurer's liability on the policy was limited to the amount of premiums paid.

The effectiveness of the exception in the event Turner had died "from any cause" after his service in the air forces had terminated is not before us and we expressly do not pass on any phase of that question.

Our conclusion renders it unnecessary to consider whether Turner died while following a hazardous occupation, under subdivision 3, of Art. 4733, R. S. 1925.

Since we hold that insurer's liability was discharged when it returned to Hatch Chevrolet Company the premium paid by Turner, it is unnecessary to consider various propositions urged by respondent as to petitioners' liability as pledgees of the policy for its unauthorized surrender to the insurer. Although the surrender was not authorized by insured's legal representative, he was in no way hurt by it. Cases like Llano Granite & Marble Co. v. Hollinger (Com. App.) 212 S. W. 151, relate to the unauthorized surrender of a pledged chose in action for less than the amount due, but they recognize the right of the pledgee to collect the entire amount due and to apply it to the indebtedness without incurring any liability to the pledgor for doing so.

■ The material facts being undisputed, the trial court should have rendered judgment for petitioners. Accordingly, both judgments below are reversed and the cause is remanded to the district court with instructions to enter judgment for petitioners on their prayer that the balance of $869.20 due be fixed as a preferred debt and lien against the automobile in suit, which judgment that court will certify to the probate court for payment in the administration proceedings in the estate of George E. Turner, Jr., deceased. Although petitioners ask an alternative judgment against respondent individually, the record shows without dispute that he was acting as administrator in taking the automobile and has continuously held it in that capacity; therefore they will be denied judgment on that demand.

Opinion delivered March 13, 1946.

Rehearing overruled May 1, 1946.