METROPOLITAN LIFE INSURANCE COMPANY *v*. STAGG.

4-8868                                              221 S. W. 2d 29

Opinion delivered June 6, 1949.

Rehearing denied July 4, 1949.

*Moore, Burrow, Chowning & Mitchell,* for appellant.

*Sam Rorex* and *Botts & Botts,* for appellee.

FRANK G. SMITH, J.  On June 6, 1943, Richard B. Stagg made application to the appellant, Metropolitan Life Insurance Company, for a life insurance policy in the initial amount of $2,046, to H. B. Ament, the agent of the insurance company.  Ament had lived at DeWitt, which was insured's home, for about 8 years and was a long time friend of the insured and his family.

Ament forwarded the application for the insurance to the district office of the Company and in due time received the policy from the Company.  He countersigned it in the designated place, as was required by the Company, and delivered it to the insured, and each month thereafter collected the premiums and executed the Company's receipt therefor.  At the time of the delivery of the policy, and attached thereto and made a part thereof, were certain "war risks" and exemption provisions the pertinent portion of which reads as follows:

"It is agreed that notwithstanding any contrary provision, the following are risks not assumed under this policy.

"(a) Death resulting from an act of war, which act occurs while insured is in the military, naval, or air forces of any country and if outside the continental limits of the United States of America (including Alaska), the Dominion of Canada, and Newfoundland, but only if death occurs within six months after such act.

"If the insured shall die as a result of a risk not assumed, referred to above, the liability of the company shall be limited to the amount, determined as of the date of death, of the reserve on this policy and on any paid-up dividend additions thereto, plus the amount of any dividend accumulations and less any indebtedness on this policy."

The policy contained a double indemnity provision for the payment of an additional sum equal to the initial amount of the policy, in case of an accidental death, which is not here involved. An additional 41¢ per month was charged for the accidental death provision and said additional premium was likewise collected each month during the life of the insured.

On May 4, 1944, the insured was inducted into the military service. He took the usual training and in due time was sent over-seas and into combat. Agent Ament continued to collect the premiums, including the additional premium for accidental death, and as he collected the premium from month to month the wife of the insured, the beneficiary named in the policy, discussed with Ament the fact that the insured was in the military service, and that he was in the combat area. All this Ament admitted, but his testimony is not denied that in advising Mrs. Stagg to continue payment of the premiums (and he offered to assist her in this respect, if necessary) he correctly told her that if her husband was killed in the continental United States he was protected, that only a small percent of soldiers who went into the combat zone were killed, and if he was not killed he would have a cash reserve built up which he could cash if he wished to do so, but that if he were killed over-seas, or in battle, that she would be entitled only to the refund

of the reserve under the policy. This reserve value was tendered and was declined.

It does not appear that Ament told Mrs. Stagg, although he might have truthfully done so, that if her husband became disabled and ineligible for other insurance, he could have the policy in full force, if he kept the premiums paid upon his discharge from the service, so that it cannot be said that Mrs. Stagg was paying for something without value, notwithstanding the provision of the policy exempting the Company from liability in case of death in combat.

The insured was killed in Belgium on January 15, 1945, while in the armed service of the United States, and suit was filed on October 23, 1945, praying judgment for $2,046, with penalty, interest and attorney fees, all of which she recovered in the trial of the case and from that judgment is this appeal.

For the affirmance of this judgment the following argument is made. Ament was a general agent and his action in receiving and remitting all premiums as they fell due constituted a waiver of the provision of the policy exempting the Company from liability under the circumstances here stated. We are cited to decisions of this court, of which there are many, to the effect that general agents of insurance companies may waive the performance of a condition inserted in the policy for its benefit and which, if not waived, would defeat a recovery on the policy.

Conceding without deciding that Ament was a general agent, possessing all authority of a general agent, and that the law in regard to a waiver is as appellee contends, the question remains whether the waiver doctrine is applicable here. We think it is not, as the controlling question is whether the death of insured under the undisputed testimony was a risk against which the insurance had been written. The insurer may unquestionably through the knowledge of its authorized agent, waive provisions of a policy which, if not waived, would defeat a recovery thereon, when with such knowledge, the insurer receives premiums to continue the policy in force,

but it is not the law that through waiver a new policy can be substituted insuring against risks expressly excluded in the original policy.

The opinion in the case of White v. Standard Life Ins. Co., 198 Miss. 325, 22 So 2d 353 reads in part as follows:

"The company has the right to exempt itself from liability for military service and insured and beneficiary had the privilege of paying the dues and continue the policy in force while insured was in the military service, notwithstanding the exemption from liability for death while in such service. Payment of dues is not inconsistent with keeping the policy alive. He might have become disabled or his health become impaired, so he could not obtain insurance after leaving the service. * * * There was nothing inconsistent between the payment of premiums and the existence of the exemption."

In the chapter on Insurance, 29 Am. Jur. § 903, p. 690, it is said: "The doctrines of implied waiver and of estoppel, based upon the conduct or action of the insurer, are not available to bring within the coverage of a policy risks not covered by its terms, or risks expressly excluded therefrom; and the application of the doctrine in this respect is, therefore, to be distinguished from the waiver of, or estoppel to deny, grounds of forfeiture."

This statement of the law accords with the opinion of this court in the case of Hartford Fire Ins. Co. v. Smith, 200 Ark. 508, 39 S.W. 2d, 411, where it was said: "The doctrine of waiver and estoppel cannot be asserted to extend coverage under a contract in which it was excluded by specific language." Among other cases cited in support of this statement is the case of Miller v. Ill. Bankers Life Ass'n., 138 Ark. 442, 212 S. W. 310, 7 A. L. R. 378, which case is very similar as to the facts of this case and which we think is controlling here.

The policy sued on in the Miller case, supra, contained a clause reading: "It is expressly provided that death while in the service in the army or navy of the

Government in time of war is not a risk covered at any time during the continuance or reinstatement of this policy for any greater sum than the amounts actually paid to the company thereon."

The death of the insured in that case occurred while he was in the army in time of war, from a natural cause. The agent who wrote and delivered the policy admitted that he told the insured that it was his construction of the policy that if the insured died of a natural cause, the policy would be paid, but that if he died by violence in battle it would not. The agent collected premiums, knowing that the insured was in the armed services, and it was insisted that there had been a waiver of the clause in the policy above copied. In overruling that contention Chief Justice McCulloch for the court said: "It will be observed that the provisions of the policy now under consideration is not for a forfeiture, but is merely an exemption from liability on account of death occurring under certain circumstances. It is not a case where acceptance of premiums with knowledge of the forfeiture constitutes recognition of the continued valid existence of the policy; nor does the case fall within the principle that a forfeiture is waived where an insurance company when it enters into a contract has knowledge through any of its authorized agents of facts which would work a forfeiture. (Citing cases)"

It was there further said: "There was no forfeiture provided for at all, but the company had, as before stated, the right to stipulate under what circumstances it should be liable. The assured had the right to pay the premium and continue the policy in force while he was in the military service of the Government, notwithstanding the exemption of the company from liability for death occurring during the period of that service, and the mere acceptance by the company of the premium with knowledge of the fact that the assured was in the military service of the Government did not constitute a waiver of the stipulation in regard to exemption."

As to the representation of the agent as to the meaning of the policy it was there said: "Scroggins (the

agent) had no authority to issue policies or to alter or interpret the terms thereof. The policy had already been issued and delivered more than two years before this conversation occurred, and the agent had no duty to perform with respect to the matter, and it was entirely beyond the apparent scope of his authority to advise the assured as to the legal effect of the various clauses of the policy." So here, any statement of Ament, the agent, to the beneficiary, who continued payment of the premiums, cannot operate to enlarge the coverage of the policy which had been written before the insured was inducted into the army.

A case cited and relied upon and extensively quoted from for the affirmance of the judgment here appealed from is that of James v. Metropolitan Life Ins. Co., 331 Ill. App. 285, 73 N. E. 2d, 140. But a headnote in that case reads as follows: "General agents of insurance companies may waive any conditions providing for avoidance or forfeiture of policies by violations of their terms, and an agent collecting premiums due may waive them after knowledge by such agent that the breach of the conditions is the cause of the avoidance or forfeiture."

This is good law as applied to the question of waiver, but as we have said, the question here involved is not one of waiving the condition which if enforced would defeat a recovery, but is one of inclusion of a risk which the policy specifically excluded. Other cases to the effect were cited.

It is alleged that the exclusion here invoked is contrary to public policy, as it tends to retard and discourage enlistment in the army of the United States. A similar argument was made in the Miller case, supra, and was answered with a statement that an insurance company has the right to select the risks against which it will insure.

We conclude that the death of the insured resulted from a risk from which the Company had expressly excluded any liability, and the judgment must be reversed and as the cause has been fully developed the judgment and cause will be dismissed.