NEW YORK LIFE INS. CO. v. WHITE.

WHITE v. NEW YORK LIFE INS. CO.

No. 13338.

United States Court of Appeals
Fifth Circuit.

July 13, 1951.

W. Colquitt Carter, Atlanta, Ga., for appellant.

Hamilton Lokey, Atlanta, Ga., for appellee.

Before HUTCHESON, Chief Judge, and BORAH and STRUM, Circuit Judges.

STRUM, Circuit Judge.

This appeal is from a judgment for plaintiff below for the face value of a policy of life insurance, No. 18,603,340, issued by defendant, appellant here.

The policy, dated March 28, 1944, was issued upon the life of Louella White, then a civilian, but who became a 1st Lieutenant in the Army Nurse Corps on April 1, 1944, and served as such until her death on April 29, 1945. While she was off duty and on her way to a dance in company with an officer of the Army Air Corps, on Saipan Island in the Pacific Ocean, where she was then stationed, both the insured and her escort were murdered by three negro American sailors who were bent on rape and robbery. Her death was not attributable to military action.

The policy in question was a conventional life policy, carrying a "rider" with the following provisions:

"Additional Conditions Relating To
War and Aviation.

The only amount payable under this policy shall be the restricted amount hereinafter defined if the death of the Insured shall occur under the circumstances set forth in any one or more of the following clauses (1), (2), (3) or (4), namely

(1) outside the Home Areas while the Insured is in the military or naval forces of any country engaged in war; or

(2) inside the Home Areas as a result of service outside the Home Areas * * *; or

(3) as a result of operating or riding in any kind of aircraft * * *; or

(4) within two years from the date of issue of this Policy as a result of war * * *.

Wherever used in this Policy

'Home Areas' means the forty-eight states of the United States of America, the District of Columbia, the Dominion of Canada and Newfoundland * * *."

Defendant tendered the reduced amount defined in the rider (return of premiums, with interest), which was refused by plaintiff, and this suit followed.

Plaintiff asserts that the Army Nurse Corps is not a part of the "military forces;" that the war clause above quoted was intended to relate only to risks incidental to military action and that it does not exclude full coverage for death by murder unconnected with military action, which might befall soldier or civilian alike.

Paragraph (1) above quoted is a "status" clause which limits liability by reason of insured's military status and geographical location alone, without reference to the cause of death, or to the activities from which it resulted. In this respect it differs from paragraphs (2), (3), and (4), which are "result" clauses applying to death caused by or resulting from war or aviation activities. If the Army Nurse Corps is a part of the military forces of the United States, the "status" clause (paragraph (1) above quoted), unless waived, would preclude recovery, as the insured at the time of her death was admittedly serving in the Army Nurse Corps outside the Home Areas as defined in the rider.

Title 10, U.S.C.A. § 161 et seq., specifically provide for the organization and composition of the Army Nurse Corps (female) as a part of the Medical Department of the Army, making provision for its operation and duties in relatively the same manner as other staff corps of the Army. Plaintiff contends, however, that since the members of the Nurse Corps are unarmed non-combatants, they are not a part of the "military forces" within the meaning of the rider, which plaintiff asserts is confined to combat branches of the military service.

Chaplains, doctors, hospital corpsmen, members of the Women's Army Corps, and others, are also non-combatants, but they are undoubtedly constituent parts of the military forces. They have the same relative rank, they are issued the same type of commission, they take the same oath, they wear a uniform with the same military insignia, they receive the same pay and allowances, they have the same retirement rights, and they are subject to the same military orders and discipline (including the Articles of War) as any other military personnel. So it is also with the Army Nurse Corps. The only distinction between them and other members of the military establishment is that instead of bearing arms, they aid and minister unto those who do, —an auxillary service essential to the welfare of the combat troops. There is no doubt that the members of the Army Nurse Corps are "in" the military forces of the United States as contemplated by the war clause, nor that at the time of her death the insured's status was as defined in paragraph (1) thereof. We find no ambiguity in the clause, so there is no occasion for resorting to interpretation. The clause is not confined to combat personnel, nor is paragraph (1) thereof limited to death caused by, or resulting from, combat.

Plaintiff asserts a waiver of the above quoted war and aviation clause, growing out of the following circumstances: In her application for the policy, dated March 27, 1944, the insured advised the company that she had been "accepted for Army duty nursing on April 1, 1944" and gave her Selected Service classification as "1-A, Army Nurse Corps." The policy was issued March 28, 1944. The quarterly premiums due on March 27, June 27, September 27, and December 27, 1944, and on March 27, 1945, were paid to and accepted by the company. By letter dated February 28, 1945, the insured's brother advised the company that the insured's then address was "Lt. Louella White, 176 Station Hospital, APO #244, c/o Postmaster, San Francisco, California," and that "since she has been sent overseas I have been taking care of this insurance policy for her, and will ask that you please mail all receipts

for her direct to me here (at Griffin, Ga.)." After receiving the letter containing the information just quoted, the company mailed to insured's brother the customary notice of the quarterly premium due on March 27, 1945, in amount of $40.80, and received and accepted payment of that premium. Plaintiff asserts that by accepting this premium in the circumstances and with the knowledge stated, the company effectually waived the limitation of the quoted war clause. See Quinones v. Life & Casualty Ins. Co., 209 La. 76, 24 So.2d 270. Plaintiff urges that any other view would enable the company to both accept the premium and avoid liability.

An insurer may be willing to insure the life of a person in the military forces so long as the insured remains in areas distant from actual hostilities, but may be unwilling to assume such risk when the person enters or approaches an actual or potential combat zone. Both the company and the applicant for insurance are free to contract as they please in that respect. In this case, the parties contemplated that the insured would soon enter the military service. The company was willing to insure her for the full amount of the policy so long as she remained in the Home Areas, but not when she left those areas. That was the protection agreed upon.

When it accepted the premium of March 27, 1945, the company knew the insured had departed the Home Areas. But her departure did not *ipso facto* terminate the policy, nor authorize the company to cancel it, as in the Golden and Harmon cases hereinafter mentioned. Acceptance of the premium continued the policy in effect in accordance with its terms, subject to the limitations of the war clause. This clause does not purport to terminate *all* coverage because of insured's departure from the Home Areas. Notwithstanding such departure, the policy still carries substantial and beneficial coverage which the insured was entitled to retain, and which, so long as the premiums were paid, the company

could not cancel. Even while serving in the military forces in time of war *within* the Home Areas, the insured was fully covered, whether death resulted from natural causes or from injuries received in military service within the Home Areas. Had the insured permanently or intermittently returned to the Home Areas, even though she returned in an uninsurable condition as to new insurance, the policy would have automatically afforded her full coverage while in the Home Areas, except for death resulting from service outside those areas. Meanwhile, other rights created by the policy were unimpaired. The insured accepted the policy with full knowledge of the limitations in the war clause.

This being a Georgia contract, the Georgia cases control. As we read those cases, acceptance of the March 27, 1945 premium does not constitute an implied waiver of the limited liability clause above quoted where, as here, the facts known to the company were not sufficient to avoid the policy so long as premiums were paid, and substantial and beneficial coverage still remains in the policy, for which the company would be entitled to receive a premium. To have refused the premium of March 27, 1945, would have breached the contract, which the insured was entitled to keep in force, if she so desired, to retain the benefit of the coverage remaining therein. Mutual Life Ins. Co. of New York v. Davis, 79 Ga.App., 336, 53 S.E.2d 571; Quillian v. Equitable Life Ins. Co., 61 Ga.App. 138, 6 S.E.2d 108; Life & Casualty Co. v. Carter, 55 Ga.App. 622, 191 S.E. 153, affirmed 185 Ga. 746, 196 S.E. 415; Life & Casualty Co. v. McLeod, 70 Ga.App. 181, 27 S.E.2d 871; Lindsey v. Life & Casualty Co., 70 Ga. App. 190, 27 S.E.2d 877.[1]

This view is consistent with the decisions of the Georgia Supreme Court in Golden v. National Life & Acc. Ins. Co., 189 Ga. 79, 5 S.E.2d 198, 125 A.L.R. 838, and Harmon v. State Mutual Ins. Co., 202 Ga. 265, 42 S.E.2d 761, relied upon by plaintiff.

1. See also Laurendeau v. Metropolitan Life Ins. Co., 116 Vt. 183, 71 A.2d 588; Hatch v. Turner, 145 Tex. 17, 193 S.W. 2d 668; Metropolitan Life Ins. Co. v. Stagg, 215 Ark. 456, 221 S.W.2d 29; Miller v. Illinois Bankers' Life Ass'n, 138 Ark. 442, 212 S.W. 310, 7 A.L.R. 378; Hartford Fire Ins. Co. v. Smith, 200 Ark.

In the Golden case the policy provided that it should be "void" if the insured had other insurance in the defendant company. In the Harmon case it was provided that the double indemnity clause "shall cease to be in force" if the insured entered the military service. Under these contracts the coverage in question was completely terminated upon the happening of the named contingency. There was either full coverage, or none at all. The Georgia court held that acceptance of a premium, with knowledge of the existence of facts which would avoid the policy, constituted a waiver. Here, however, even though the company knew the insured had departed the Home Areas, and thus brought the restricted liability clause into operation, the company could not for that reason cancel the policy. It still afforded a substantial and beneficial coverage for which the company was entitled to receive, and the insured agreed to pay, the premiums above mentioned. So it can not be said here, as was true in the Golden and Harmon cases, either that the company was receiving premiums for which it gave nothing in return, or that it accepted premiums with knowledge of facts which would avoid the policy.

What has been said also disposes of the cross appeal.

Reversed.

508, 139 S.W.2d 411; White v. Standard Life Ins. Co., 198 Miss. 325, 22 So.2d 353; Marks v. Supreme Tribe of Ben Hur, 191 Ky. 385, 230 S.W. 540, 15 A.L. R. 1277; Neidle v. Prudential Ins. Co., 299 N.Y. 54, 85 N.E.2d 614; Janco v. John Hancock Ins. Co., 164 Pa.Super. 128, 63 A.2d 138; Caruso v. John Hancock Ins. Co., 136 N.J.L. 597, 57 A.2d 359; Coit v. Jefferson Std. Life Ins. Co., Cal.App., 161 P.2d 812; Note, 137 A.L. R. 12, 68. Compare Johnson v. Mutual Life Ins. Co., 154 Ga. 653, 115 S.E. 14.