Vernona Hendrick **HOBBS**, as guardian of Helen A. Hendrick, incompetent, Appellant,

v.

The **FRANKLIN LIFE INSURANCE COMPANY**, Appellee.

No. 16926.

United States Court of Appeals Fifth Circuit.

April 1, 1958.

Rehearing Denied May 22, 1958.

Gladstone L. Kohloss, Charles V. Silliman, Orlando, Fla., for appellant.

Vernon W. Evans, Jr., Thomas C. MacDonald, Jr., Tampa, Fla., Shackleford, Farrior, Shannon & Stallings, Tampa, Fla., of counsel, for appellee.

Before RIVES, TUTTLE and JONES, Circuit Judges.

RIVES, Circuit Judge.

This appeal is from a summary judgment denying recovery on an insurance policy. The general nature of the policy is fairly indicated in its caption:

"Lifetime Disability Income
"This policy provides indemnity for loss of life, limb, limbs, sight or time resulting from bodily injury effected through accidental means, and for loss of time caused by illness—all to the extent herein provided."

The copy of the insured's application attached to the policy disclosed that his occupation was that of airline pilot, and he answered "No" to the question: "Have you in contemplation any special journey or hazardous undertaking?" A provision of the policy itself reads: "This policy is issued to the Insured in the *Preferred* Class of the Company and in the occupation of *Pilot*." The Company promised to pay for loss of time resulting from injury, or caused by illness, disabling the insured from performing duties "pertaining to his occupation." For loss of life resulting from injury the amount of insurance was $10,-000.00. The provision of the policy upon which the Company denied liability reads as follows:

"This policy does not cover disability or loss resulting from

* * *; (b) injury sustained while in or on, or in consequence of having been in or on, any vehicle or device for aerial navigation, or in falling therefrom or therewith, or while adjusting, operating, or handling any such vehicle or device (except while actually riding as a fare-paying passenger in a licensed passenger airplane, provided and operated by an incorporated passenger carrier for the regular transportation of passengers and which is being operated at the time by a duly licensed pilot upon a regularly established time schedule over a regular passenger route between definitely established airports); * * *."

The policy was issued twelve years before the insured's death and remained continuously in force and effect. Helen A. Hendrick was the beneficiary. The parties stipulated to the facts leading up to and the cause of the insured's death as follows:

"Angus Gustavus Hendrick, Jr., on March 26, 1955, was an employee of Pan American World Airways, Inc., having been employed by that concern since January 2, 1943. On March 26, 1955, the said Angus Gustavus Hendrick, Jr., in his capacity of employee of Pan American World Airways, Inc., was serving as first officer and co-pilot on Flight 845/26, a scheduled flight of Pan American World Airways, Inc., from Seattle-Tacoma, Washington, to Sidney, Australia. At approximately 11 o'clock A.M. on said date, the said aircraft on which the said Angus Gustavus Hendrick, Jr., was flying developed engine trouble and crashed into the waters of the Pacific Ocean about thirty-five miles off the coast of Oregon. At the time of the engine trouble and of the crash, the said Angus Gustavus Hendrick, Jr., was serving as co-pilot and was sitting in the right-hand seat in the cockpit of said aircraft. The impact with the water at the time of the crash was quite severe and the fuselage of the aircraft was broken up by the impact. At the time of the impact the said Angus Gustavus Hendrick, Jr., fell forward and slumped over to the right side of his seat, striking his forehead on objects in the cockpit and receiving a laceration of the forehead; however, he thereafter straightened up and commenced to look for his life jacket. Three life rafts were inflated and launched from the aircraft. The lanyards of these life rafts were released and they were carried away from the aircraft by light surface winds. All but three of the passengers and crew boarded the rafts. However, three persons, including the said Angus Gustavus Hendrick, Jr., did not board the rafts. The said Angus Gustavus Hendrick, Jr., left the aircraft by jumping or falling into the waters of the Pacific Ocean, wearing a life jacket. However, the said Angus Gustavus Hendrick, Jr., was never close enough to any of the three rafts to be picked up or to receive the lines from one of the rafts to be pulled in, despite the efforts on the part of the persons in the rafts to paddle to Hendrick and the other persons in the water.

"Approximately twenty minutes after the plane crashed into the sea, it sank. Approximately two hours after the airplane crash, the U.S.S. Bayfield, a United States Navy Transport vessel, arrived at the scene and rescued the survivors. The body of Angus Gustavus Hendrick, Jr., was retrieved by personnel of the Bayfield from the water of the Pacific Ocean, fully dressed and wearing a life jacket. He was pronounced dead by a physician on board the naval transport ship. Hendrick suffered second degree burns about his face and neck which were caused by the combination effect of the sun and the gasoline and oil left on the surface of the water after the aircraft sank. He further

had a laceration on his forehead which he received during the plane crash. The water temperature at the location in question was 47 degrees.

"The death of Angus Gustavus Hendrick, Jr., was caused by exposure and exhaustion leading to shock, which in turn led to drowning."

The appellant makes two specifications of error:

"1. The Court was in error in finding that an insurer may accept premiums on a policy of accident, health and life insurance designed to protect the insured from loss of earnings in his occupation as an airline pilot for a period of twelve years, with full knowledge that the insured's occupation involved flying in an airplane, and at the same time deny all liability on the policy because the insured was engaged in his normal occupation of flying in an airplane immediately prior to his death.

"2. The Court was in error in finding that the death of the insured resulted from an injury sustained in consequence of having been in or on a vehicle or device for aerial navigation within the meaning of the aviation exclusion clause in the policy."

In our opinion neither specification is well taken.

■ 1. The policy was not rendered meaningless or worthless because of the insured's occupation as an airline pilot. Loss of time in that occupation was covered whether caused by illness or resulting from many kinds of injury. Similarly, the policy had a broad scope of operation as to loss of life from injury not specifically excluded by the terms of the policy. It is true that an airline pilot was more exposed to an excluded risk than were many other policyholders. Presumably, however, that fact was taken into consideration by the Company in the amount of the premium charged,

and by the insured in contracting for the coverage. The coverage afforded is not so unreasonably restricted as to indicate fraud or overreaching. There was no effort to reform the policy for mutual mistake. Under the circumstances of this case, we think that the courts are without authority to make a new contract for the parties, or to extend the coverage upon any theory of waiver or estoppel. C. E. Carnes & Co. v. Employers' Liability Assur. Corp., 5 Cir., 1939, 101 F.2d 739, 742; New York Life Insurance Co. v. Jones, 5 Cir., 1955, 224 F.2d 33. We agree with the district court:

"That the acceptance by insurer of premiums when it had knowledge that insured was an airplane pilot did not waive the aviation exclusion provision of the policy and the insurer is not estopped from pleading said provision as a defense. Kinard v. Mutual Benefit Health & Accident Ass'n [D.C.], 108 F.Supp. 780; Providence Washington Indemnity Co. v. Varella [D.C.], 112 F.Supp. 732; New York Life Ins. Co., v. White, 5 Cir., 190 F.2d 424."

■ 2. The stipulated facts clearly and affirmatively show that the insured lost his life in consequence of having been in an airplane within the meaning of the aviation exclusion clause of the policy. He was on board a land-based airplane which crashed into the cold waters of the Pacific Ocean thirty-five miles off the coast of Oregon. His efforts to save himself and the efforts of the other occupants of the plane to save him proved futile. The connection between his death and the crash is close and direct, and separated in time by no more than two hours. We agree with the district court:

"That the death of the insured resulted from an injury sustained in consequence of having been in or on a vehicle or device for aerial navigation. Neel v. Mutual Life Insurance Co. of N. Y. [2 Cir.], 131 F.2d 159; Order of United Commercial Travelers [of America] v. King, [4

Cir.], 161 F.2d 108; Green v. Mutual Ben. Life Ins. Co. [1 Cir.], 144 F.2d 55."

See also Willingham v. Life & Casualty Insurance Co. of Tenn., 5 Cir., 1954, 216 F.2d 226, 47 A.L.R.2d 1017. The case of Massachusetts Mut. Life Ins. Co. v. Smith, 5 Cir., 1952, 193 F.2d 511; 194 F.2d 1006, does not hold to the contrary.

The district court properly granted the defendant's motion for summary judgment, and its judgment is

Affirmed.